# LEASE

This LEASE made and entered into this 11th day of July, 2003, by and between Precision Laboratories, Inc. an Illinois corporation (hereinafter referred to as "TENANT"), and 977 Northpoint Venture, L.L.C., an Illinois limited liability company (hereinafter referred to as "LANDLORD").

## WITNESSETH:

### DEMISE

LANDLORD and TENANT hereby mutually assent for good and valuable consideration to enter into a lease for premises that are situated in that certain building (the "BUILDING") located at 977 Northpoint Blvd. in Waukegan, Illinois 60085, and TENANT'S address shall be 959 and 965 Northpoint Blvd. (the "PREMISES"). The BUILDING and the real estate on which it is located are hereinafter referred to as the "PROPERTY".

Such letting and hiring is upon and subject to the terms, covenants and conditions herein set forth and TENANT and LANDLORD covenant as a material part of the consideration for this LEASE to keep and perform each and all of said terms, covenants and conditions by them to be kept and performed and that this LEASE is made upon the condition of such performance.

## 1. Purpose

The PREMISES are to be used only for offices for the warehouse and distribution of fertilizers and related products for golf and landscaping industry and ancillary warehouse, assembly or storage purposes. Any other use of the PREMISES without the express written consent of the LANDLORD shall be deemed a violation of this LEASE.

## 2. Term

The term ("Term") of this LEASE shall be for a period beginning on July 28, 2003, and terminating on July 31, 2004, except as otherwise expressly provided in this LEASE.

## 3. Possession

LANDLORD shall use due diligence to give TENANT Possession of the PREMISES on the Commencement Date of this LEASE or within reasonable time after such Commencement Date. It is further understood that within forty-eight (48) hours of Possession, TENANT shall deliver to LANDLORD a "punch list" of repair items that TENANT shall not be liable to repair at the end of the leasehold Term, except for latent defects.

## 4. Definitions As Used In This Lease

A. The term "Commencement Date" is the date of the beginning of the LEASE as defined in Section 2 of this LEASE.


EXHIBIT
A

B. The term "Tenant's Proportionate Share" shall mean forty (40%) percent. For the purposes of this LEASE, the Rentable Square Footage of the PREMISES and the BUILDING shall be deemed to be 22,800 square feet and 57,000 square feet, respectively. The TENANT'S share allocated to the PREMISES as it relates to the BUILDING as a whole, is not meant, nor shall be construed, as a representation by LANDLORD as to the rentable or usable square footage of the PREMISES.   The parties recognize that this ratio, as well as the area measurement are reasonable approximations that may not be exactly precise, but both LANDLORD and TENANT accept such ratio as final and binding for all purposes of this LEASE.

C. The term "Taxes" means any and all taxes of every kind, whatsoever, which LANDLORD shall pay or become obligated to pay for each calendar year of the Term (including any extensions or renewals) of this LEASE (regardless of whether such taxes were assessed or became a lien during, prior or subsequent to the calendar year of payment) because of or in connection with the ownership, leasing and operation of the PROPERTY including without limitation, real estate taxes, legal fees, consulting fees and court costs charged for the protest or reduction of property taxes and/or assessments or an increase therein in connection with the PREMISES including the BUILDING, any tax or excise on rent or any other tax (however described) on account of rental received for use and occupancy of any or all of the BUILDING and/or the PREMISES, whether any such taxes are imposed by the United States, the state or other local governmental municipality, authority or agency or any other political subdivision of any thereof in the jurisdiction in which the PROPERTY is located. Taxes shall not include any net income, capital stock, estate or inheritance taxes; provided however, if at any time during the Term hereof a tax or excise on rents or income or other tax however described (herein called "Rent Tax") is levied or assessed by the United States or the state in which the PROPERTY is located or any political subdivision thereof on account of the rents hereunder or the interest of LANDLORD under this LEASE, and if such Rent Tax is in lieu of or as a substitute for, in whole or in part, real estate taxes or other ad valorem taxes such Rent Tax shall constitute Taxes.

D. The term "Operating Costs" means any and all expenses, costs and disbursements [other than Taxes as defined in Section 4(C)] of every kind and nature whatsoever incurred by LANDLORD in connection with the ownership, management, maintenance, operation and repair of the PROPERTY [including without limitation, exterior energy costs, easement maintenance expenses, including but not limited to landscape maintenance and replacement; water and sewer charges levied by the Village of Waukegan; pest extermination; rubbish removal; common area rubbish removal; sprinkler and/or security system monitoring fees and utility charges; snow removal; patching, paving, sealing and striping of parking areas, driveways and dock areas; exterior gutters and downspouts, dock rails and stair rails; HVAC System maintenance contract; overhead door maintenance; dock leveler maintenance; ; insurance costs (including but not limited to fire, property, commercial general liability, terrorism, and one (1) year's loss of rents as well as all reasonable and customary deductibles paid by Landlord for damages and injuries covered by policies of insurance maintenance for the Property, and all sums paid to satisfy judgments rendered affecting the Property to the extent not covered by insurance); routine repairs, maintenance and decorating; amortization (along with reasonable financing charges) of capital improvements made to the PROPERTY which may be required by any government authority or which will improve the operating efficiency of the PROPERTY, which LANDLORD shall be or become obligated to pay in respect of a calendar year, regardless of when such Operating Costs were incurred; or any other expenses which LANDLORD shall be or become obligated to pay in respect of a calendar year, regardless of when such Operating Costs were incurred, or any other expenses or charges whether or not hereinbefore mentioned which,

in accordance with generally accepted accounting or management principles respecting comparable buildings in the Chicago Metropolitan Area, would be considered as an expense of owning, managing (except property management fees), operating, maintaining or repairing the PROPERTY. Operating Costs shall not include expenditures for the following: (i) costs of alterations of the PREMISES; (ii) costs of capital improvements on the PREMISES or the BUILDING and costs of curing construction defects, if any; (iii) depreciation (except on any capital improvements made or installed after the Commencement Date for the purpose of saving labor or otherwise reducing applicable Operating Costs); (iv) interest and principal payments on mortgages, if any; (v) real estate brokers' leasing commissions or compensation; (vi) any cost or expenditure (or portion thereof) for which LANDLORD is reimbursed, whether by insurance proceeds or otherwise; (vii) property management fees; and (viii) any costs or expenditures by LANDLORD for the roof, exterior walls, foundation, or structural members thereof, except if such damage is caused by any negligence or intentional act or omission of TENANT, or TENANT'S agents, employees, or invitees; notwithstanding the foregoing, as to sub-sections (i) through (viii), the cost of any capital improvements to the BUILDING made after the date of this LEASE which are (1) intended to reduce Operating Costs; or (2) required to cause the BUILDING to comply with the Americans with Disabilities Act or (3) which are required under any governmental laws, regulations, or ordinances which were not applicable to the BUILDING as of the date hereof shall be deemed Operationing Costs and be amortized on a level pay debt service basis over fifteen (15) years, with interest at ten percent (10%) per annum shall be included in Operating Costs.

## 5. Base Rent

Except as otherwise provided herein, TENANT shall pay as Base Rent to LANDLORD'S agent SLJ Properties, L.L.C. and mailed in care of Rothbart Realty Company, 1945 Techny Road, Suite 6, Northbrook, Illinois 60062-5357, the following sums:

| From: August 1, 2003 | To: July 31, 2004 | $ 124,260.00 | Annualized |
|---|---|---|---|
| | | $ 10,355.00 | Monthly |

in advance beginning August 1, 2003, and on the first day of each calendar month thereafter during the Term and at the same daily rate for a fraction of a month if the Term shall end on any day except the last day of a calendar month.

Any rent (whether Base Rent or Additional Rent) or other amount due from TENANT to LANDLORD under this LEASE which shall not be paid within ten (10) days of the due date shall be subject to a late charge (i) in the amount of five (5%) percent of the payment, and (ii) any payment which shall not be paid within ten (10) days of the due date shall, in addition to said late charge, bear interest at the Prime Rate as published by Wall Street Journal, plus four (4%) percent from the date the same is payable under the terms of this LEASE until the same shall be paid. The payment of such interest shall not excuse or cure any default by TENANT under this LEASE. If any payment given to LANDLORD by TENANT under this LEASE shall not be honored by the bank upon which it is drawn, LANDLORD, at its option, may require that all payments made by TENANT to LANDLORD over the next twelve (12) months to be by certified check, or cashier's check, or wire transfer. In addition, TENANT shall reimburse LANDLORD for any of LANDLORD'S bank costs incurred in connection with TENANT'S bounced check. Notwithstanding the foregoing, LANDLORD shall still be entitled to any other remedies available to LANDLORD under the LEASE or at law for TENANT'S late rental payments. The covenants

herein to pay rent (both Base Rent and Additional Rent) shall be independent of any other covenant set forth in this LEASE.

## 6. Taxes and Operating Costs; Additional Rent

It is further agreed between the parties hereto that in addition to the Base Rent provided for herein that TENANT shall also pay during the Term of this LEASE as Additional Rent, Tenant's Proportionate Share of the Taxes and Operating Costs as hereinbefore defined. To ensure the payment of such Taxes and Operating Costs, TENANT shall pay to LANDLORD beginning on August 1, 2003, and on the first day of each and every month thereafter at the time of payment of the rental provided for herein one-twelfth (1/12th) of Tenant's Proportionate Share of the estimated Taxes and Operating Costs against the PROPERTY. The initial payment for the year 2003 shall be Three Thousand Three Hundred ($3,300.00) Dollars per month, prorated at the same daily rate for fractions of a month if the Term shall begin on any day except the first day or shall end on any day except the last day of the month. The monies paid by TENANT as aforesaid shall be used by LANDLORD to pay the Taxes and Operating Costs when the bills become available. [For information purposes only, 2002 Taxes totaled Seventy-Three Thousand Three Hundred and Fifty-Three ($73,353.00) and 2002 Operating Costs totaled Twenty ($20,000.00) Dollars].

If anytime during the Term of this LEASE (a) the Taxable Valuation of the PROPERTY is reduced below Eight Hundred and Thirty Nine Thousand Five Hundred and Twenty Four ($839,524.00) Dollars Dollars being the Taxable Valuation of the PROPERTY as of the Commencement Date or (b) the LANDLORD is successful in reducing the Taxable Valuation below Eight Hundred and Thirty Nine Thousand Five Hundred and Twenty Four ($839,524.00) Dollars being the Taxable Valuation of the PROPERTY, the difference in the real estate taxes between Eight Hundred and Thirty Nine Thousand Five Hundred and Twenty Four ($839,524.00) Dollars times the applicable tax rate and the tax bill for any given year shall accrue solely to the LANDLORD, and TENANT shall not be obligated to pay for any professional fees attributable to such savings.

## 7. Adjustment Payment

As soon as practicable during each calendar year of the Term of this LEASE and the next calendar year following the year in which this LEASE terminates, LANDLORD shall deliver to TENANT a written statement setting forth in reasonable detail Tenant's Proportionate Share of the Additional Rent (Taxes and Operating Costs as hereinbefore defined) for the immediately preceding calendar year. Within thirty (30) days after delivery of such statement, TENANT shall pay to LANDLORD less any amounts previously paid by TENANT per Section 6 herein ("Net Rental Adjustments"). Subsequent monthly Additional Rent payments shall thereafter be increased to the sum of: (1) one-twelfth (1/12th) of such LANDLORD'S good faith estimate of Additional Rent for the present calendar year; and (2) one-twelfth (1/12th) of such LANDLORD'S good faith estimate of Additional Rental for the present calendar year multiplied by the number of monthly rental payment dates having elapsed for such calendar year less such Additional Rental paid to date, divided by the number of monthly rental payment dates remaining in such present calendar year.

In the event that any such statement required above indicates that the total Additional Rent paid by TENANT during the preceding calendar year exceeds the aggregate Additional Rent payable by TENANT for such calendar year pursuant to Sections 6 and 7 herein, LANDLORD shall apply such excess on any amounts of Additional Rent next falling due under this LEASE so long as TENANT is not then in default of any of the terms and provisions of this LEASE.

In the event of any dispute as to any Additional Rent due hereunder, TENANT shall have the right with ten (10) days advance written notice to inspect LANDLORD'S accounting records relative to Taxes and Operating Costs at LANDLORD'S accounting office during normal business hours at any time within thirty (30) days following the furnishing by LANDLORD to TENANT of such statement provided that TENANT is not in default of any terms and conditions of this LEASE. Unless TENANT takes written exception to any item within ninety (90) days after the furnishing of the statement of Additional Rent (which shall be noted on the item as "paid under protest"), such statement of Additional Rent shall be considered as final and accepted by TENANT.

In the event of the termination of this LEASE by expiration of the stated Term or for any other cause whatsoever prior to the determination of the Additional Rent as hereinabove set forth, LANDLORD shall prorate based upon either the last known Taxes or the new real estate tax assessment for the PROPERTY using the last known tax rate and applicable factors or equalization rates and Operating Costs at one hundred ten (110%) percent on the basis of which the number of days in such partial year and/or full year bears to three hundred sixty five (365) days. TENANT'S agreements to pay Additional Rent up to the time of termination of this LEASE shall survive the expiration or termination of the LEASE as shall LANDLORD'S obligation to refund any of TENANT'S excess Additional Rent deposits. If TENANT shall fully and faithfully perform every provision of this LEASE to be performed by it, the security deposit or any remaining balance and the remaining balance of any other Additional Rental Deposits, if any, shall be returned to TENANT at the expiration of the LEASE Term and upon TENANT'S vacation of the PREMISES.

## 8. Holding Over

Should TENANT hold-over after the termination of this LEASE, by lapse of time or otherwise, TENANT shall become a tenant from month to month and any such Holdover shall not constitute an extension of this LEASE. Additionally, during such Holdover period, TENANT shall pay as final and liquidated damages as to any rent obligation Base Rent and Additional Rent (as heretofore adjusted or as estimated by LANDLORD) at one hundred and fifty hundred (150%) percent of the rate payable for the month immediately preceding said holding over. In addition, TENANT shall pay LANDLORD all damages, consequential as well as direct, sustained by reason of TENANT'S holding over. The provisions of this paragraph do not exclude the LANDLORD'S rights of re-entry or any other right hereunder.

## 9. Maintenance Of The BUILDING

A. <u>Maintenance By TENANT</u>. During the Term of this LEASE or any extension or renewal period, TENANT shall at its sole cost and expense maintain and operate the leased PREMISES in good condition and repair including replacements; such repairs, maintenance, and replacements shall include but not be limited to plate and window glass; floor coverings; heating, air-conditioning, and mechanical appurtenances and or fixtures (HVAC); dock levelers, truck dock or drive-in doors and exterior doors; lighting; power wiring, emergency lights, and electrical fixtures; plumbing systems and fixtures; hot water heater; rubbish removal; and janitorial services. TENANT shall also make arrangements directly with the appropriate utility companies for the supply of gas, electric, telephone or other communication services and shall pay all fees, expenses thereof. LANDLORD hereby reserves the right to separately meter TENANT'S water-sewer usage, and bill TENANT according for such excess usage and/or excess usage surcharges. It is understood that LANDLORD shall procure a HVAC maintenance contract, the

cost of which shall be treated as an Operating Costs and TENANT shall be obligated to pay for any and all repairs, maintenance and replacements of the HVAC systems attributable to the PREMISES which are not included in Operating Costs; notwithstanding the foregoing during the Initial Term of this LEASE, TENANT'S costs as to the HVAC systems shall not exceed in the initial calendar year the sum of Four Thousand ($4,000.00) Dollars (HVAC CAP) and the HVAC cap for each successive year thereafter shall be increased annually by seven (7%) percent, which amounts shall be prorated based upon TENANT'S actual occupancy for the PREMISES during any calendar year for which TENANT has partial occupancy. In the event TENANT'S actual HVAC costs for any calendar year are less than the applicable HVAC CAP, the difference between the HVAC CAP and TENANT'S actual HVAC costs shall be accumulated and carried forward to future calendar years and shall be applied in an amount not to exceed the accumulated amount to the amount, if any, that the TENANT'S actual HVAC costs in any. calendar year exceed the HVAC CAP. If TENANT does not promptly make such repairs, maintenance, or replacements as required hereunder, LANDLORD may, but need not, make such repairs, maintenance, and replacements and one hundred twenty five (125%) percent of LANDLORD'S cost for such repairs, maintenance and replacements shall be due and payable by TENANT upon demand. Even if LANDLORD makes such maintenance, repairs or replacements, such shall not waive the default of TENANT hereunder in failing to make such repairs, maintenance or replacements.

B. <u>Maintenance By LANDLORD</u>. Except for damage caused by any negligence or intentional act or omission of TENANT, or of TENANT'S agents, employees or invitees, LANDLORD agrees that it will keep and maintain in good condition and repair (1) the exterior of the PREMISES (including the landscaping, parking area and driveways), (2) the roof (excluding any heating or cooling or ventilating units mounted on the roof), structural soundness of the concrete floors and exterior walls, and (3) those portions of the water, plumbing, sewer, and electrical systems that are not within the possession or control of the TENANT.

C. <u>Maintenance By LANDLORD-TENANT</u>. Notwithstanding Section 9(A) above and except for any damage caused by any negligence or intentional act or omission of TENANT, or of TENANT'S agents, employees or invitees, LANDLORD shall to the extent necessary repair at LANDLORD sole cost and expense for the first sixty (60) days of TENANT'S occupancy, the electrical, plumbing, hot water heater, and LANDLORD shall to the extent necessary repair at LANDLORD'S sole cost and expense the heating to January 31, 2004 and LANDLORD shall to the extent necessary repair at LANDLORD'S sole cost and expense to the air-conditioning to September 30, 2003. Thereafter as herein provided, TENANT shall be responsible for all of the maintenance, repairs and replacements.

Notwithstanding the above [9(A), 9(B), or 9(C)], any damage to the HVAC and electrical systems due to fumes and/or emissions caused by TENANT'S use and occupancy of the PREMISES shall be TENANT'S sole responsibility to replace, repair and maintain said systems.

All of the required maintenance, repairs and replacements required hereunder; (1) shall be completed expeditiously in a good and workmanlike manner; (2) shall be in compliance with all legal requirements and applicable building codes; (3) shall become part of the demised PREMISES; and (4) shall be subject to the terms of this LEASE.

## 10. <u>Condition Of The Premises</u>

Prior to the Commencement Date, LANDLORD, at its sole expense, shall place all mechanicals including lights, HVAC, dock doors, and plumbing in good working order.

Subject to "punch list" heretofore referred to by taking Possession of the PREMISES, TENANT hereby covenants that the PREMISES were, as of the date of taking Possession, in good order, repair and condition. Except as stated in these Sections 9 and 10, it is further mutually understood that other than any express warranties stated in th LEASE, the PREMISES are being leased on an "As Is" basis with no promises of the LANDLORD to alter, remodel, decorate, clean or improve the PREMISES or the BUILDING. LANDLORD hereby DISCLAIMS all WARRANTIES, either express or implied, with respect to the condition of the PREMISES or the BUILDING.

As of the date of the execution of this LEASE, LANDLORD has not received: (1) any notices from any governmental or quasi-governmental agencies alleging violations of any federal, state, local or municipal environmental health and safety laws, statutes, ordinance, and rules and regulations; or (2) any notices of claims made or threatened regarding noncompliance with Title III of the American with Disabilities Act of 1990 (ADA) as to the PREMISES or the BUILDING; or (3) any notices that the PREMISES or the BUILDING violate, in any way, any law, code, rule, regulation or order.

## 11. Examination Of Premises Prior To Termination Of Leasehold

At the termination of the Term of this LEASE, TENANT shall yield Possession of the PREMISES to LANDLORD in good condition and repair, loss by fire or other casualty (except if such fire or other casualty is due to the negligence of the TENANT), ordinary wear and tear excepted. TENANT shall have the sole responsibility for removing any and all debris from the interior and exterior of the PREMISES; subject to Section 9(a) herein, repairing and/or replacing any and all heating, air-conditioning and mechanical appurtenance and/or fixtures so that same are in good working order; replacing any and all broken glass in and about the PREMISES; cleaning the PREMISES so that they are returned to LANDLORD in a clean and orderly condition including removal of any and all foreign materials on the floor and walls of the PREMISES (including oil and other chemicals), and delivering the keys to LANDLORD at the place of payment of the rent.

It is understood that whenever possible the parties will mutually inspect the PREMISES prior to the termination of the LEASE for the purpose of evaluating any and all repair or restoration work to be performed by TENANT in order to return the PREMISES to LANDLORD in its condition prior to TENANT'S taking Possession of the PREMISES. LANDLORD hereby reserves the right to have qualified contractors partake in this inspection. It is further understood that upon vacation of the PREMISES by TENANT that LANDLORD shall re-inspect the PREMISES for the purpose of determining whether or not all repairs and restoration required of TENANT have been made, and that after such inspection any and all deposits with LANDLORD shall be returned to TENANT, after deducting therefrom the estimated costs of any and all repairs and/or restoration required to be performed by TENANT which have not been made as of the time of TENANT'S vacation of the PREMISES and after the further deduction therefrom of any and all monies estimated to be due to LANDLORD for the payment of any Taxes, Operating Costs, or other obligations of TENANT hereunder. Upon finalization of any amounts estimated hereunder, any additional amounts owed by TENANT to LANDLORD shall immediately be paid to LANDLORD; and any additional amounts retained by LANDLORD shall be returned to TENANT.

TENANT shall be responsible for all damages consequential as well as direct sustained by LANDLORD as a result of TENANT'S failure to surrender Possession of the PREMISES in accordance with the terms

of this LEASE and the provisions within this paragraph shall survive termination of this LEASE and shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and assigns, and mortgagees thereof.

## 12. Uses Prohibited

TENANT maintains the right to use the PREMISES only for those purposes expressly stated in Section 1 of this LEASE. In no event shall TENANT use the PREMISES or BUILDING for any activities which would be in violation of all federal, state, local or municipal laws, statutes, ordinances, and rules and regulations, including but not limited to those relating to zoning, environmental protection, health and safety so that no clean-up claim or other obligation or responsibility arises from a violation of any of the foregoing, TENANT further agrees to promptly cure any such violation at its own expense, and shall furthermore defend and indemnify LANDLORD, its agents and beneficiaries, mortgagees, and officers, agents, and employees thereof respectively, for any and all liability, loss, costs (including attorneys fees and expenses), damages, responsibilities or obligations incurred as a result of any violation of any of the foregoing.

## 13. Omit

## 14. Alterations and Repairs

TENANT shall not erect any partitions, make any alterations in or additions, or changes to the PREMISES without the LANDLORD'S prior written approval in each and every instance, such consent shall not be unreasonably withheld. LANDLORD'S consent to any alteration of the PREMISES is limited to only that such alteration and does not give TENANT the right to additional alterations without LANDLORDS express written consent. If TENANT does not remove any additions, decorations, fixtures, hardware, non-trade fixtures and improvements after request to do so by LANDLORD, LANDLORD may remove the same and TENANT shall pay the of such removal to LANDLORD upon demand. Except to the extent of LANDLORD'S negligent or willful act or omission, TENANT hereby agrees to hold LANDLORD and LANDLORD'S beneficiaries, their agents and employees harmless from any and all liabilities of every kind and description which may arise out of or be connected in any way with said alterations or additions. Any mechanic's lien filed against PREMISES, or the BUILDING or the PROPERTY, for work claimed to have been furnished to TENANT shall be discharged of record by TENANT within ten (10) days thereafter, at TENANT'S expense, provided however TENANT shall have the right to contest any such lien on the posting of reasonably sufficient security. Notwithstanding anything contained to the contrary herein, TENANT shall, without LANDLORD'S consent, have the right to make minor improvements or minor decorations within the PREMISES, employing contractors selected by TENANT, provided such improvements/decorations are in keeping with the standards of TENANT'S existing PREMISES and do not affect the structure of the BUILDING and/or any BUILDING systems.

## 15. Abandonment

During the Term, if TENANT shall abandon, vacate or surrender (whether at the end of the stated Term or otherwise) the PREMISES, or be dispossessed by process of law, or otherwise, any personal property belonging to TENANT and left on the PREMISES shall be deemed abandoned, at the option of the LANDLORD.

## 16. Assignment And Subletting

TENANT shall not assign, transfer or encumber this LEASE and shall not sublease the PREMISES or any part thereof or allow any other person to be in possession thereof without the prior written consent of LANDLORD in each and every instance, which consent or consents shall not be unreasonably withheld.

## 17. Signs

For purpose of this LEASE, "Signs" shall include all signs, designs, monuments, logos, banners, projected images, pennants, decals, advertisements, pictures, notices, lettering, numerals, graphics, or decorations. TENANT shall not place or affix any exterior or interior signs visible from the outside of the PREMISES. At LANDLORD'S sole cost in accordance with the BUILDING'S standard signage, LANDLORD shall affix TENANT'S name on the BUILDING'S directory and front and rear steel doors.

## 18. Damage To Property - Injury To Persons

TENANT, as a material part of the consideration to be rendered to LANDLORD under this LEASE, to the extent permitted by law, hereby waives all claims except claims caused by or resulting from (a) the non-performance of the LANDLORD of its obligation under this LEASE after written notice or (b) the willful or negligent act or negligent omission of LANDLORD, its agents, servants or employees which TENANT or TENANT'S successor or assigns may have against LANDLORD, or its agents, servants, or employees for loss, theft or damage to the PROPERTY and for injuries to persons in, upon or about the PREMISES or the BUILDING from any cause whatsoever.

TENANT will hold LANDLORD, its agents, servants, and employees exempt and harmless from and on account of any damage or injury to any person, or to the goods, wares, and merchandise of any person, arising from the uses of the PREMISES by TENANT or arising from the failure of TENANT to keep the PREMISES in good condition as herein provided if non-performance by the LANDLORD or negligence of the LANDLORD, its agents, servants or employees does not contribute thereto. Neither LANDLORD nor its agents, servants, employees shall be liable to TENANT for any damage by or from any act or negligence of any co-tenant or other occupant of the same BUILDING, or by any owner or occupant of adjoining or contiguous PROPERTY, provided however, that the provisions of this paragraph shall not apply to negligence or willful and wanton misconduct of LANDLORD, its agents, servants or employees. TENANT agrees to pay for all damage to the BUILDING or the PREMISES, as well as all damage to tenants or occupants thereof caused by TENANT'S misuse or neglect of the PREMISES, its apparatus or appurtenances or caused by any licensee, contractor, agent or employees of TENANT. Notwithstanding the foregoing provisions, neither LANDLORD nor TENANT shall be liable to one another for any loss, damage or injury caused by its act or neglect to the extent that the other party has recovered the amount of such loss, damage or injury from insurance and the insurance company is bound by this waiver of liability.

Particularly, but not in limitation of the foregoing paragraph, all PROPERTY belonging to TENANT or any occupant of the PREMISES that is in the BUILDING or the PREMISES shall be there at the risk of TENANT or other person only, and LANDLORD or its agent, servants, or employees (except in case of non-performance by the LANDLORD after written notice or negligence or willful and wanton conduct of LANDLORD or its agents, servants, employees) shall not be liable for: damage to or theft of or misappropriation of such PROPERTY; nor for any damage to PROPERTY entrusted to LANDLORD, its agents, servants, or employees, if any; nor for the loss of or damage to any PROPERTY by theft or otherwise, by any means whatsoever, nor for any injury or damage to persons or PROPERTY resulting from fire, explosion, falling plaster, gas, electricity, snow, water or rain which may leak from any part

of the BUILDING or from the pipes, appliances or plumbing works therein or from the roof, street or subsurface or from any other place or resulting from dampness or any other cause whatsoever; nor for interference with the light or other incorporeal hereditaments, nor for any latent defect in the PREMISES or in the BUILDING. TENANT shall give prompt written notice to LANDLORD in case of fire or accidents in the PREMISES or in the BUILDING or of defects therein or in the fixtures or equipment.

In case any action or proceeding be brought against LANDLORD by reason of any obligation on TENANT'S part to be performed under the terms of this LEASE, or arising from any act or negligence of the TENANT, or of its agents or employees, TENANT, upon notice from LANDLORD shall defend the same at TENANT'S expense by counsel reasonably satisfactory to LANDLORD.

TENANT shall maintain in full force and effect during the Term of this LEASE (including any period prior to the beginning of the Term during which TENANT has taken Possession in responsible companies licensed or approved to conduct business in Illinois, and approved by LANDLORD (i) special causes of loss insurance covering all TENANT'S property in, on or about the PREMISES, with full waiver of subrogation rights against LANDLORD in an amount equal to the full replacement cost of such property, and (ii) commercial general liability insurance, including broad form commercial general liability option, and products and competed operations, insuring TENANT against all claims, demands or actions for injury to or death of any one person and damage to PROPERTY in an amount of not less than Two Million Dollars ($2,000,000.00) combined single limit per occurrence plus One Million Dollars ($1,000,000.00) excess liability coverage or such other amounts as LANDLORD may reasonably require; and furthermore fire-legal and/or TENANT'S legal liability in an amount not less than One Hundred Thousand Dollars ($100,000.00). All liability policies shall cover the entire PREMISES. LANDLORD shall maintain in full force and effect during the Term of this LEASE (a) special form insurance for the full replacement cost of the BUILDING, (b) business income insurance equal to one years rent, and (c) commercial general liability insurance the premium for which shall be included as an Operating Cost.

All such policies shall name LANDLORD'S PARTIES and any mortgagee as an additional insured. For purposes of this Section 18, LANDLORD'S PARTIES shall mean (i) LANDLORD; (ii) omit; (iii) Rothbart Realty Company, property manager; and (iv) the respective affiliates, subsidiaries, successor, assigns heirs, officers, directors, shareholders, partners, members, employees, agents of LANDLORD. All insurance policies shall indicate that at least thirty (30) days prior written notice shall be delivered to all additional parties insured by the insurer prior to termination cancellation of such insurance and TENANT shall provide Certificates of Insurance, not less than ten (10) days prior to the Commencement Date, evidencing the aforesaid coverage to all insured parties. Failure of TENANT to provide the insurance coverage set forth in the above paragraphs shall entitle LANDLORD to either (i) treat said failure as a default and/or (ii) obtain such insurance and charge TENANT the premiums therefore plus interest thereon at the rate set forth in Section 5 hereof as Additional Rent. TENANT shall not violate or permit a violation of any of the conditions or terms of any such insurance policies and shall perform and satisfy all reasonable requirements of the insurance company issuing such policies. With respect to any insurance policy procured to comply with any financial assurance requirement imposed by any state of federal law or regulation, or to any other casualty, PROPERTY, or environmental impairment insurance purchased by TENANT, such policy or policies shall name LANDLORD PARTIES and any mortgagees of LANDLORD as additional parties insured.

## 19. Damage Or Destruction

In the event the PREMISES or the BUILDING are damaged by fire, act of terrorism or war, or other casualty ("Casualty Event") and the insurance proceeds have been made available therefore by the holder or holders of any mortgages or deeds of trust covering the BUILDING, the damage shall be repaired by and at the expense of LANDLORD to the extent of such insurance proceeds available therefore, provided such repairs can, in LANDLORD'S reasonable opinion, be made within one hundred fifty (150) days after the occurrence of such damage without the payment of overtime or other premiums. Until such repairs are completed, the rent shall be abated to the extent all or portion of the PREMISES are rendered untenantable. If repairs cannot, in LANDLORD'S reasonable opinion be made within one hundred fifty (150) days, LANDLORD shall notify TENANT within thirty (30) days following the occurrence of such damage of its determination, in which event, or in the event such repairs are commenced but are not substantially completed within one hundred fifty (150) days of the date of such occurrence, either party may, by written notice to the other, cancel this LEASE as of the date of the occurrence of such damage. Except as provided in this Section, there shall be no liability of LANDLORD by reason of any injury to or interference with TENANT'S business or property arising from any Casualty Event or from the making or not making of any repairs, alterations or improvements in or to any portion of the BUILDING or the PREMISES or in or to fixtures, appurtenances and equipment therein. TENANT understands that LANDLORD will not carry insurance of any kind on TENANT'S furniture or furnishings or on any fixtures or equipment removable by TENANT under the provisions of this LEASE and that LANDLORD shall not be obliged to repair any damage thereto or replace the same. LANDLORD shall not be required to repair any injury or damage caused by any Casualty Event, or to make any repairs or replacements to or of improvements installed in the PREMISES by or for TENANT.

## 20. **Entry By Landlord**

LANDLORD and its agents shall have the right to enter the PREMISES at all reasonable times (upon reasonable notice except in case of an emergency) for the purpose of examining or inspecting the same, and for any other service to be provided by LANDLORD to TENANT hereunder or to any other tenants, to show the same to prospective purchasers or tenants of the BUILDING, and make such alterations, repairs, improvements, or additions, whether structural or otherwise, to the PREMISES or to the BUILDING as LANDLORD may deem necessary or desirable. LANDLORD shall use reasonable efforts on any such entry not to unreasonably interrupt or interfere with TENANT'S use and occupancy of the PREMISES.

## 21. **Insolvency or Bankruptcy**

Neither this LEASE nor any interest therein nor any estate hereby created shall pass to any trustee or receiver in bankruptcy or to any other receiver or assignee for the benefit of creditors by operation of law or otherwise during the Term of this LEASE or any renewal or extension thereof.

## 22. **Default**

If any of the following events of default shall occur, to wit:

    A. LANDLORD fails to receive any payment of Base Rent, Additional Rent, or other required payment when due and such failure continues for more than ten (10) days after LANDLORD gives written notice of such failure to TENANT;

    B. TENANT defaults in the prompt and full performance of any other (i.e. other than payment of Base Rent or any other sum) covenant, agreement or condition of this LEASE and such other

default shall continue for a period of twenty (20) days after notice thereof from LANDLORD to TENANT (unless such other default involves a hazardous condition, in which event it shall be cured forthwith), provided, however, in the event such default cannot be cured with a period of twenty (20) days and TENANT is diligently attempting to cure such default, the time period to cure same shall be reasonably extended but in no event for a period of more than ninety (90) days, or

C. The leasehold interest of TENANT be levied upon under execution or be attached by process of law, or if TENANT abandons the PREMISES; or

D. Bankruptcy or insolvency of TENANT

then in any such event, LANDLORD, besides other rights or remedies it may have, shall have the immediate right of re-entry and may remove all persons and PROPERTY from the PREMISES; such PROPERTY may be removed and stored in any other place in the BUILDING in which the PREMISES are situated, or in any other place, for the account of and at the expense and at the risk of TENANT.

If TENANT fails more than twice within any twelve (12) month period to observe or perform any covenant, condition, or agreement of this LEASE (including with out limitation the payment of Base Rent and Additional Rent), regardless of whether such defaults shall have been cured by TENANT, the third default shall at the election of LANDLORD, in its sole and absolute discretion, be deemed a noncurable Event of Default.

TENANT hereby waives all claims for damages which may be caused by the re-entry of LANDLORD and re-taking possession of the PREMISES or removing or storing the furniture and PROPERTY as herein provided and will save LANDLORD harmless from any loss, costs, or damages occasioned by LANDLORD thereby, and no such re-entry shall be considered or construed to be a forcible entry.

Nothing herein contained shall limit or prejudice the right of LANDLORD to provide for and obtain as damages by reason of any such termination of this LEASE or of possession an amount equal to the maximum allowed by any statute or rule of law in effect at the time when such termination takes place, whether or not such amount be greater, equal to or less than the amounts of damages which LANDLORD may elect to receive as set forth above. Notwithstanding anything to the contrary herein contained or any other rights exercised by LANDLORD hereunder, upon the occurrence of an event of a monetary or material default by TENANT under the Terms of this LEASE, rent (including any abatement rent) which otherwise would be due or would have been due shall be immediately due and payable.

Notwithstanding anything in this LEASE to the contrary, and without limiting LANDLORD'S other rights and remedies provided for in this LEASE or at law or equity, if TENANT is in default under any covenant, condition, or agreement of this LEASE more than two (2) times within any twelve month period, irrespective of whether or not such default is cured, LANDLORD at its sole direction and in its sole and absolute discretion, may do one or more of the following: (a) increase the Security Deposit by an amount that LANDLORD determines, in its sole and absolute discretion, is necessary to protect its interests; provided that such amount does not exceed four (4) months of the then applicable Monthly Base Rent and Additional Rental Deposit, and such increase shall be paid by TENANT immediately upon demand by LANDLORD, (b) charge a fee, on the third occurrence of TENANT's violation of such covenant, condition, or agreement and each time thereafter, as Additional Rent, of Five Hundred ($500) Dollars, and such fee shall increase by twenty (20%) percent with each additional violation of this LEASE; (c) cancel TENANT's right to exercise the option(s) and right(s) granted to TENANT under

Section 45 of this LEASE; and (d) declare a noncurable event of default as defined in this Section and pursue LANDLORD'S remedies thereunder.

## 23. **Non Real Estate Taxes**

During the Term hereof, TENANT shall pay prior to delinquency all taxes assessed against and levied upon fixtures, furnishings, equipment and all other personal PROPERTY of TENANT contained in the PREMISES, and TENANT shall cause said fixtures, furnishing, equipment and other personal PROPERTY to be assessed and billed separately from the real PROPERTY of LANDLORD.

## 24. **Eminent Domain**

If the PROPERTY, or a substantial part thereof or a substantial part of the PREMISES, shall be lawfully taken or condemned or conveyed in lieu thereof, (or conveyed under threat of such taking or condemnation), for any public use or purpose, the Term of this LEASE shall end upon and not before the date of taking of possession by the condemning authority and without apportionment of the award. In any such event, TENANT hereby assigns to LANDLORD, all of TENANT'S rights interest, and title if any, in such award and specifically agrees that any such award shall be the entire property of LANDLORD in which TENANT shall not be entitled to share. TENANT further waives any right to challenge the right of condemning authority to proceed with such taking. LANDLORD shall have the right to cancel this LEASE upon not less than ninety (90) days notice prior to the date of cancellation designated in the notice. No money or other consideration shall be payable by LANDLORD to TENANT for the right of cancellation, and TENANT shall have no right to share in any condemnation award or in any judgment for damages or in any proceeds of any sale made under any threat of condemnation or taking. TENANT shall have the right to separately pursue its own award for relocation expenses in the event of such condemnation proceedings.

## 25. **Subordination**

LANDLORD has heretofore and may hereafter from time to time execute and deliver mortgages or trust deeds in the nature of a mortgage, both referred to herein as "Mortgage" against the PROPERTY and BUILDING or any interest therein. If requested by the Mortgagee or trustee under any Mortgage, TENANT will either (a) subordinate its interest in this LEASE to said Mortgages, and to any and all advances made thereunder and to the interest thereon, and to all renewals, replacements, modifications and extensions thereof, or (b) make TENANT'S interest in this LEASE inferior thereto; and TENANT shall promptly execute and deliver such agreement or agreements as may be reasonably required by such Mortgagee or Trustee under any Mortgage, provided, however, that any such subordination shall provide that so long as TENANT is not in default hereunder, its tenancy and rights of quiet enjoyment shall not be disturbed.

It is further agreed that if any Mortgage shall be foreclosed: (a) the liability of the mortgagee or trustee thereunder or purchaser at such foreclosure sale or the liability of a subsequent owner designated as LANDLORD under this LEASE shall exist only so long as such trustee, mortgagee, purchaser or owner is the owner of the PROPERTY and such liability shall not continue or survive after further transfer of ownership; (b) upon request of the mortgagee or trustee, TENANT will attorn, as TENANT under this LEASE, to the purchaser at any foreclosure sale under any mortgage, and TENANT will execute such instruments as may be necessary or appropriate to evidence such attornment; and (c) this LEASE may not be modified or amended so as to reduce the rent or shorten the Term provided hereunder, or so as to adversely affect in any other respect to any material extent the rights of the

LANDLORD, nor shall this LEASE be canceled or surrendered without the prior written consent, in each instance of the mortgagee or trustee under any Mortgage. It is understood that TENANT'S tenancy and rights of quiet enjoyment shall not be disturbed so long as TENANT is not in default under this LEASE.

TENANT'S failure to execute such subordination instrument within ten (10) business days of TENANT'S receipt shall be deemed a default under this LEASE.

TENANT agrees to give any mortgagees and/or trust deed holders, by registered mail, a copy of any notice of default served upon the LANDLORD by TENANT provided that prior to such notice TENANT has received notice (by way of service on TENANT of a copy of an assignment of rents and leases, or otherwise) of the address of such mortgagees and/or trust deed holders. TENANT further agrees that if LANDLORD shall have failed to cure such default within the time provided for in this LEASE, then the mortgagees and/or trust deed holders shall have an additional thirty (30) days after receipt of notice thereof within which to cure such default or if such default cannot be cured within that time, then such additional time as may be necessary, if, within such thirty (30) days, any mortgagee and/or trust deed holder has commenced and is diligently pursuing the remedies necessary to cure such default (including but not limited to commencement of foreclosure proceedings, if necessary to effect such cure).

## 26. Waiver

LANDLORD'S written waiver of any cause of action for any breach of any term or covenant of this LEASE shall not constitute a waiver of any such clause in the future. The acceptance of rent hereunder shall not be construed to be a waiver of any breach by TENANT of any term, covenant or condition of this LEASE. It is understood and agreed that the remedies herein given to LANDLORD shall be cumulative, and the exercise of any one remedy by LANDLORD shall not be to the exclusion of any other remedy.

## 27. Inability To Perform

This LEASE and the obligation of TENANT to pay rent (Base and Additional) hereunder and perform all of the other covenants and agreements hereunder on part of TENANT to be performed shall not be affected, impaired or excused, nor shall LANDLORD at any time be deemed to be in default hereunder because LANDLORD (a) is unable to fulfill any of its obligations under this LEASE or (b) to supply or is delayed in supplying any service expressly or by implication to be supplied or (c) is unable to make, or is delayed in making any TENANT improvement, repair, additions, alterations, or decorations or (d) is unable to supply or is delayed in supplying any equipment or fixtures if LANDLORD is prevented or delayed from so doing by reason of strike or labor troubles or any outside cause whatsoever beyond the reasonable control of LANDLORD, including but not limited to riots and civil disturbances or energy shortages or governmental preemption in connection with a national emergency or by reason of any rule, order, or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency.

## 28. Subrogation

The parties hereto agree to use good faith efforts to have any and all fire, extended coverage or any and all material damage insurance which may be carried endorsed with a subrogation clause substantially as follows: "This Insurance shall not be invalidated should the insured waive in writing prior to a loss any or all right of recovery against any party for loss occurring to the PROPERTY described herein"; and each party hereto waives all claims for recovery from the other party for any loss or damage (whether or not such loss or damage is caused by negligence of the other party and notwithstanding any provision or provisions contained in this LEASE to the contrary) to any of its property insured under valid and collectible insurance policies to the extent of any recovery collectible under such insurance, subject to the limitation that this waiver shall apply only when it is permitted by the applicable policy insurance.

## 29. Sale By Landlord

In the event of a sale or conveyance by LANDLORD of the PROPERTY containing the PREMISES, the same shall operate to release LANDLORD from any future liability upon any of the covenants or conditions, expressed or implied, herein contained in favor of TENANT, and in such event TENANT agrees to look solely to the responsibility of the successor in interest of LANDLORD in and to this LEASE. If any security deposit has been made by TENANT hereunder, LANDLORD shall transfer such security deposit to such successor in interest of LANDLORD and thereupon LANDLORD shall be released from any further obligations hereunder. This LEASE shall not be affected by any such sale, and the TENANT agrees to attorn to the purchaser or assignee.

## 30. Rights Of Landlord To Perform

All covenants and agreements to be performed by TENANT under any of the terms of this LEASE shall be performed by TENANT at TENANT'S sole cost and expense and without any abatement of rent. If TENANT shall fail to pay any sum of money, other than rent, required to be paid it hereunder, or shall fail to perform any other act on its part to be performed hereunder, and such failure shall continue for fifteen (15) days after notice thereof by LANDLORD, LANDLORD may, but shall not be obligated so to do, and without waiving or release TENANT from any obligations of TENANT, make any such payment or perform any such other act on TENANT'S part to be made or performed as in this LEASE provided.

## 31. Attorney's Fees

In the event of any litigation between TENANT and LANDLORD to enforce any provision of this LEASE or any right of either party hereto, the unsuccessful party of such litigation shall pay to the prevailing party all costs and expenses, including reasonable attorneys fees, incurred therein.

## 32. Estoppel Certificate

Either party shall at any time and from time to time upon not less than ten (10) days prior written notice from the other execute, acknowledge and deliver to the requesting party a statement in writing certifying that this LEASE is unmodified and in full force and effect and the dates to which the rental and other charges are paid and acknowledging that there are not, to such certifying knowledge, any uncured defaults on the part of the other party hereunder or specifying such defaults if any are claimed as well as any other reasonable information requested by LANDLORD. TENANT'S failure to deliver such statement within ten (10) business days be deemed a default under this LEASE and shall be conclusive upon TENANT that this LEASE is in full force and effect, without modification except as may be

represented by LANDLORD, that there are no uncured defaults in LANDLORD'S performance and that not more than two (2) months rental has been paid in advance.

### 33. Omit

### 34. Notice

Any notice required to be given under this LEASE from LANDLORD to TENANT may be served personally, by mail, by overnight delivery by a nationally recognized carrier addressed to TENANT at the PREMISES or by facsimile transmission. Any notice required to be given under this LEASE from TENANT to LANDLORD may be served personally, by mail, by overnight delivery by a nationally recognized carrier to LANDLORD in care of Rothbart Realty Company at 1945 Techny Road, Suite #6, Northbrook, Illinois 60062 or by facsimile transmission to 847-291-7787. If any notice is served by mail, notice shall be deemed served on the second day after mailing by registered or certified mail. If any notice is served by overnight courier, notice shall be deemed served on the first business day after delivery to the courier. If any notice is transmitted by facsimile transmission or similar means, notice shall be deemed served or delivered upon sender's receipt of a transmission report which states that said notice was successfully transmitted to the intended recipient, generated by sender's facsimile machines, provided a copy of the facsimile is also delivered via delivery or mail. In the event of a release or threatened release of pollutants or contaminants to the environment resulting from TENANT'S activities at the site or in the event any claim, demand, action or notice is made against the TENANT regarding TENANT'S failure or alleged failure to comply with any local, state and federal environmental rules, regulations, statutes and laws, the TENANT shall immediately notify the LANDLORD in writing and shall give to LANDLORD copies of any written claims, demands or actions, or notices so made. In addition, immediately after receipt, TENANT shall also advise LANDLORD in writing and provide LANDLORD with copies of (if applicable): (i) any notices from any governmental or quasi-governmental agencies alleging violations of any federal, state, local or municipal environmental health and safety laws, statutes, ordinance, building codes, and rules and regulations; or and (ii) any notices of claims made or threatened regarding noncompliance with Title III of the American with Disabilities Act of 1990 (ADA) as to any portion of the PREMISES.

### 35. Deposit

TENANT shall deposit with LANDLORD the sum of Twenty Thousand Seven Hundred and Ten ($20,710.00) Dollars payable upon execution of the LEASE, as security for the full and faithful performance of every provision of this LEASE to be performed by TENANT. If TENANT defaults with respect to any provision of this LEASE, including but not limited to the provisions relating to the payment of rent, LANDLORD may use, apply or retain all or any part of this security deposit or any other deposit made under this LEASE, for the payment of any rent and any other sum in default, or for the payment of any other amount which LANDLORD may spend or become obligated to spend by reason of TENANT'S default or to compensate LANDLORD for any other loss or damage which LANDLORD may suffer by reason of TENANT'S default. If any portion of said deposit is to be used or applied, TENANT shall within five (5) days after written demand therefore deposit cash with LANDLORD in an amount sufficient to restore the security deposit to its original amount and TENANT'S failure to do so shall be a material breach of this LEASE. LANDLORD shall not be required to keep this security deposit separate from its general funds and TENANT shall not be entitled to interest on such deposit. If TENANT shall fully and faithfully perform every provision of this LEASE to be performed by it, the security deposit or any balance thereof shall be returned to TENANT (or at LANDLORD'S option to the

last assignee of TENANT'S interest hereunder) at the expiration of the LEASE Term and upon TENANT'S vacation of the PREMISES.

At TENANT'S option, TENANT may supply up to fifty (50%) percent of the $20,710.00 Deposit with an unconditional irrevocable letter of credit in favor of LANDLORD subject to the following terms and conditions: the letter of credit (i) shall be in form and substance satisfactory to LANDLORD in its commercially reasonable discretion; (ii) shall be issued by a commercial bank reasonably acceptable to LANDLORD and located within the Chicago-land metropolitan area; (iii) shall be payable in full at sight upon presentment to the issuer by a simple sight draft or certificate stating that TENANT has committed a default under this LEASE (iv) shall be of a term not less than one year; and (v) shall at least sixty (60) days prior to the then-current expiration date of such Letter of Credit, be either (1) renewed (or automatically and unconditionally extended) from time to time through the sixty (60) day after the expiration of the LEASE Term or any Extension Term or (2) replaced with cash in the amount of the Security Deposit. Notwithstanding anything in this LEASE to the contrary, any cure or grace periods set forth in this LEASE shall not apply to any of the foregoing, and, specifically, if TENANT fails to timely comply with the requirements of subsection (v) above, then LANDLORD shall have the right to immediately draw upon the Letter of Credit without notice to TENANT and hold or apply (in accordance with this Section) the proceeds as a cash Security Deposit. Any failure or refusal of the issuer to honor the Letter of Credit shall be at TENANT'S sole risk and shall not relieve TENANT of its obligations hereunder with respect to the Deposit.

In the event that TENANT shall become a Debtor under the Bankruptcy Code, neither TENANT, as such Debtor, nor any Trustee in any Chapter 7, 11 or 13 bankruptcy case of the Debtor, shall seek, under any section of the Bankruptcy Code, to enjoin or otherwise seek to prevent by court process any draw on any letter of credit issued pursuant hereto. To the extent any issuer of any such letter of credit requires TENANT to provide collateral to secure any obligations of TENANT to reimburse such issuer for any draw on any such letter of credit, TENANT agrees to grant any such security, interest or lien and such security interest or lien shall be fully perfected no later than ten (10) days after issuance of the letter of credit required hereunder.

## 36. Omit

## 37. Quiet Enjoyment

So long as TENANT shall observe and perform its covenants and agreements hereunder, TENANT shall, at all times during the Term herein granted, peacefully and quietly have and enjoy possession of the PREMISES without any encumbrance, interference, disturbance or hindrance by, from or through LANDLORD, its successors or assigns.

## 38. Rights Reserved

LANDLORD unilaterally and solely reserves the following rights:

    (a)    To change the BUILDING'S name or street address;

    (b)    Omit;

    (c)    To designate and approve, prior to installation, all types of window shades, blinds, drapes, awnings;

(d)   To retain at all times, and to use in appropriate instances, keys and/or keycards, to all doors within and in PREMISES. No locks or bolts shall be altered, changed or added without the prior written consent of LANDLORD;

(e)   From time to time to make and adopt on a non-discriminatory basis reasonable rules and regulations for the protection and welfare of the BUILDING and its tenants and occupants, as the LANDLORD may determine, and the TENANT agrees to abide by all such rules and regulations provided that they are enforced in a non-discriminatory manner;

(f)   To have and retain a paramount title to the PROPERTY free and clear of any act of TENANT;

(g)   To grant to anyone the exclusive right to conduct any business or render any services in the BUILDING, which does not interfere with TENANT'S use of the PREMISES.

(h)   To allocate parking on a reasonable basis provided it is allocated on a non-discriminatory manner; and

(i)   To place marketing signs on the exterior of the BUILDING

## 39. Omit

## 40. Real Estate Broker

LANDLORD and TENANT each represents that it has dealt directly with, and only with GVA Williams of Illinois and NAI Hiffman as Brokers in connection with this LEASE and agrees to indemnify and hold the other party harmless from all claims or demands of any other broker or brokers for any commission alleged to be due such broker or brokers in connection with its participating in the negotiation of this LEASE. LANDLORD agrees to pay all commissions when due to Brokers.

## 41. Use Of Loading Dock And Common Areas

TENANT shall use and cause all employees, agents, invitees and licensees to use the common areas of the PROPERTY, including but not limited to the sidewalks, driveways, the parking lot, and the loading dock on the PROPERTY, in such a manner as to prevent disruption to other tenants and LANDLORD. No vehicles or material shall be permitted to block sidewalks or driveways nor shall any vehicle be parked in the parking lot for longer than is necessary for the customary business purposes of TENANT. If, after notice to TENANT by LANDLORD, of a violation of this Section, if not promptly cured, LANDLORD may remove such vehicles or material as are in violation of this Section and TENANT shall pay LANDLORD'S expenses in connection therewith, on demand. LANDLORD shall have no responsibility for loss or damage to such vehicles or material, it being understood that the removal is at TENANT'S sole risk.

## 42. Omit

## 43. Miscellaneous Provisions

(a) Submission of this instrument for examination or signature by TENANT does not constitute a reservation or offer or option for lease, and it is not effective as a lease or otherwise, so as to incur the least inconvenience to TENANT. TENANT acknowledges and agrees with LANDLORD that, except as may be specifically set forth elsewhere in this LEASE, neither LANDLORD, nor any employee of LANDLORD, nor other party claiming to act on LANDLORD'S behalf, has made any representations, warranties, estimations, or promises of any kind or nature whatsoever relating to the physical condition of the BUILDING in which the PREMISES are located, or the land under the BUILDING, including by way of example only, the fitness of the PREMISES for TENANT'S intended use or the actual dimensions of the PREMISES or the BUILDING.

(b) The invalidity or unenforceability of any single provision herein shall not affect or impair any other provisions.

(c) This LEASE is to be governed by and construed pursuant to the internal laws of the State of Illinois irrespective of its conflicts of laws principle.

(d) Should any mortgage require a modification of this LEASE, which modifications will not bring about any increased cost or expense to TENANT or in any other way substantially change the rights and obligations of TENANT hereunder, then and in such event, TENANT agrees not to unreasonably withhold its consent so that this LEASE may be so modified.

(e) TENANT agrees to provide to LANDLORD, upon request, a current certified financial statement of TENANT certified by an authorized representative of TENANT to be true and correct, and further agrees to provide any other credit, banking, or financial information reasonably requested by LANDLORD; notwithstanding the foregoing, TENANT is not required to provide a financial statement while in compliance with the terms of this LEASE.

(f) All rights and remedies of LANDLORD under this LEASE, or that may be provided by law, may be exercised by LANDLORD in its own name individually, or in its name by its management agent, currently Rothbart Realty Company, or in the name of its operating manager and all legal proceedings for the enforcement of any such rights or remedies, including distress for rent, forcible detainer, and any other legal or equitable proceedings, may be commenced and prosecuted to final judgment and execution by LANDLORD in its own name individually, or in its name, or by its agent. LANDLORD hereby represents that its operating manager has full power and authority to execute this LEASE and to make and perform the agreements herein contained and TENANT expressly stipulates that any rights or remedies available to LANDLORD either by the provision of this LEASE or otherwise may be enforced by LANDLORD in its own name individually, in the name of its operating manager, or in its name by its management agent, Rothbart Realty Company.

(g) Any of the covenants and conditions of this LEASE shall survive termination of the LEASE.

(h)     The marginal headings and titles to the paragraphs of this LEASE are not a part of this LEASE and shall have no effect upon the construction or interpretation of any part hereof.

(i)     In case TENANT is a corporation, partnership, or limited liability company, TENANT hereby represents and warrants that this LEASE has been duly authorized, executed and delivered by and on behalf of the TENANT and constitutes the valid and binding agreement of the TENANT in accordance with the terms hereof and that TENANT represents and warrants that it is duly formed and in good standing. In case TENANT is a partnership, TENANT represents and warrants that all of the persons who are general or managing partners in said partnership have executed this Lease on behalf of TENANT, or that this LEASE has been executed and delivered pursuant to and in conformity with a valid and effective authorization therefore by all of the general or managing partners of such partnership, and is and constitutes the valid and binding agreement of the partnership and each and every partner therein in accordance with its terms.  Also, it is agreed that each and every present and future general partner in TENANT shall be and remain at all times jointly and severally liable hereunder and that the death, resignation or withdrawal of any general partner shall not release the liability of such partner under the terms of this LEASE unless and until the LANDLORD shall have consented in writing to such release.

(j)     WAIVER OF RIGHT TO TRIAL BY JURY.  LANDLORD and TENANT hereby waive any right to a trial by jury in any action or proceeding based upon, or related to, the subject matter of this LEASE.  This waiver is knowingly, intentionally, and voluntarily made by each of parties hereto and each party acknowledges to the other that neither the other party nor any person acting on its respective behalf has made any representations to induce this waiver of trial by jury or in any way to modify or nullify its effect.  The parties acknowledge that they have read and understand the meaning and ramifications of this waiver provision and have elected same of their own free will.

(k)     In the event carpeting is furnished by LANDLORD, TENANT will be fully responsible for and upon LANDLORD'S request will pay for any damage to carpeting caused by lack of protection mats under desk chairs or equipment or any other abnormal puncture and wearing of carpet due to negligence only.

(l)     TENANT shall not paint the block walls of the leased PREMISES without the LANDLORD'S prior written consent;

(m)     Whenever a provision in this LEASE is stated to apply to the Term of this LEASE, or words of similar import, the same shall be deemed to mean and include any Extended or Option Terms as well, unless specific reference is made to such provision as having applicability only to all or any portions of the Initial Term (from July 28, 2003 through July 31, 2004) and/or any extended or option Term or extended option Terms.

(n)     Whenever a reference is made in this LEASE, or in an amendment to this LEASE, to either the Commencement Date or the date by which TENANT initially took POSSESSION of the PREMISES, for the purpose of determining the condition to which the PREMISES are to be restored upon termination of the LEASE or the condition of the PREMISES at the time the TENANT first took POSSESSION of the PREMISES, then in either such

event, the Commencement Date for the aforementioned purposes shall be deemed to be the later of July 28, 2003, which was the original Commencement Date or date by which the TENANT initially took POSSESSION of the PREMISES under this LEASE.

(o)     This is a commercial lease and has been entered into by both parties in reliance upon the economic and legal bargains contained herein, and both parties agree and represent each to the other that they have had the opportunity to obtain counsel of their own choice to represent them in the negotiation and execution of this LEASE, whether or not either or both have elected to avail themselves of such opportunity. This LEASE shall be interpreted and construed in a fair and impartial manner without regard to such factors as the party which prepared the instrument, the relative bargaining powers of the parties or the domicile of any party.

(p)     LANDLORD shall in no way be liable for any loss, expense, or damage (whether direct or indirect) that TENANT may sustain or incur by reason of any change, failure, interference, disruption, interruption, or defect in the supply or character of the electric energy furnished to the PREMISES or the BUILDING, regardless of its duration, or if the quantity or character of the electric energy supplied by the Electric Service Provider is no longer available or suitable for TENANT'S requirements.

## 44. Omit

## 45. Option to Extend

So long as TENANT is not in default, TENANT shall have (i) the First Option exercisable by irrevocable written notice to LANDLORD given no later than May 31, 2004 time being of the essence for the giving of such notice to extend the Term of this LEASE for an extended Term beginning on August 1, 2004 and terminating on November 30, 2004, (the "First Option"), and (ii) the Second Option, exercisable by irrevocable written notice to LANDLORD given no later than September 30, 2004 time being of the essence for the giving of such notice to extend the Term of this LEASE for an extended Term beginning on December 1, 2004, and terminating on March 31, 2005 ("Second Option") on the same terms and conditions as the within LEASE except for the amount of the Base Rent. For purposes herein, the term First Option and Second Option shall collectively or individually also be referred to as Option(s). In the event TENANT fails to exercise this Option, TENANT'S rights hereunder in this Section 45 be null and void and be of no further force or effect.

(a)     In the event TENANT so exercises this First Option, the Annual Base Rent for the Term of the First Option shall be One Hundred and Twenty-Nine Thousand Four Hundred and Fifty-Six ($129,456.00) Dollars.

(b)     In the event TENANT so exercises this Second Option, the Annual Base Rent for Term of the Second Option shall be One Hundred and Twenty-Nine Thousand Four Hundred and Fifty-Six ($129,456.00) Dollars.

(c)     One-Twelfth (1/12th) of the adjusted Base Rent as determined in the foregoing Sections 45(a) and (b) shall be the Monthly Base Rent, but in no event shall the adjusted Monthly Base Rent be less than the Monthly Base Rent in the immediately preceding month.

It shall be a condition of TENANT'S right to exercise this Option that TENANT is in compliance with all the terms and conditions of this LEASE both at the time of TENANT'S exercise of this Option and at the time the Option Term is scheduled to commence. This condition may be waived by LANDLORD at its sole discretion and may not be used by TENANT as a means to negate the effectiveness of TENANT'S exercise of this Option. Except as provided in Section 16 of this LEASE, TENANT hereby acknowledges that the within Option shall not be transferred or assigned. At the expiration of the Option to Extend Term as set forth in this Section 45, TENANT shall have no further right to extend or renew the Term of this LEASE pursuant to this Section.

## 46. Tenant's Option To Terminate This Lease

During the Term of this LEASE, TENANT shall have an option to terminate this LEASE ("Termination Option") effective at any time after July 31, 2004. This Termination Option is granted subject to the following terms and conditions:

(i) TENANT shall give LANDLORD at lease sixty (60) days prior irrevocable written notice as to TENANT'S election to terminate this LEASE ("Tenant's Notice") time being of the essence for the giving of such termination notice; provided, that TENANT may only terminate this LEASE as of the last day of a month (the "Termination Date"); and that the Termination Date shall be no less than sixty (60) days after Tenant's Notice, but in no event shall the Termination Date be prior to July 31, 2004.

(ii) It shall be a condition of TENANT'S right to exercise this Termination Option that TENANT is in compliance with all the terms and conditions of this LEASE both at the time of TENANT'S exercise of this Termination Option and at the Termination Date. This condition may be waived by LANDLORD at its sole discretion and may not be used by TENANT as a means to negate the effectiveness of TENANT'S exercise of this Termination Option.

(iii) If TENANT timely and properly exercises this Termination Option, (i) all rent payable under this LEASE shall be paid through and apportioned as of the Termination Date (in addition to payment by TENANT of the Fee) and (II) TENANT shall surrender and vacate the PREMISES and deliver Possession thereof to LANDLORD on or before the Termination Date in the condition required under the LEASE, as if the Termination Date were the original Termination Date of this LEASE. TENANT shall thereafter be relieved of all their obligations under this LEASE, except for those obligations accruing prior to the Termination Date or those obligations which by their terms expressly survive the Termination Date.

(iv) This Termination Option shall automatically terminate and become null and void upon the earlier to occur of (i) the termination of TENANT'S right to Possession of the PREMISES; (ii) the assignment by TENANT of this LEASE, in whole or in part; (iii) the sublease by TENANT of all or any part of the PREMISES demised under this LEASE; (iv) the recapture by LANDLORD of any space under Section 16 of this LEASE; (v) the failure of TENANT to timely or properly exercise this Termination Option; or (vi) TENANT is in default under this LEASE during the period of time from the date that TENANT exercised this Termination Option or on the Termination Date.

06/29/2006  13:24    847596301718    PLI    USA

## 47. Successors And Assigns

The covenants and conditions herein contained shall apply to and bind the respective heirs, successors, executors, administrators, and assigns of the parties hereto. The terms "LANDLORD" and "TENANT" shall include the successors and assigns of either such party, whether immediate or remote.

IN WITNESS WHEREOF, the LANDLORD and TENANT have executed this LEASE the day and year first above written.

LANDLORD:

977 NORTHPOINT VENTURE, L.L.C.
an Illinois limited liability company

By:    SLJ PROPERTIES, L.L.C., Manager

By:    _____
       Gary B. Rothbart, Operating Manager

TENANT:    PRECISION LABORATORIES, INC., an Illinois Corporation

By:    _____

ATTEST:    _____