Attorney No: 33718

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| BRUCE ROGERS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 06 L 5376 |
| ) | |
| ROTHBART PROPERTIES, et al. ) | |
| ) | |
| Defendants. ) | |

**MOTION TO RECONSIDER THE COURT'S RULING ON DEFENDANT PRECISION LABORATORY INC'S MOTION TO DISMISS PURSUANT TO 735 ILCS 5/2-619(A)(9)**

NOW COMES Plaintiff, by and through his attorneys Cutler & Hull and in support of his motion to reconsider states as follows:

1. On May 4, 2007 the court entered an Order dismissing Counts III and IV of Plaintiff's complaint pursuant to 735 ILCS 5/2-619. In that Order the court stated that Precision Laboratory, Inc. owed no duty to Plaintiff as to Plaintiff's fall on the common area since said area was not located on the Defendant's Precision Laboratories, Inc.'s premises.

2. Plaintiff respectfully suggests that the court's ruling should be reconsidered because Illinois case law is clear that a possessor of property owes a duty to invitees to provide a safe means of ingress and egress to their premises.

3. Defendant Precision Laboratories, Inc., did not provide the court with any proof that the spot where Plaintiff fell was not on the entrance or exit area to its premises. To the contrary, the testimony of Precision's witnesses made it very clear that the place where Plaintiff fell was on the entrance way to Precision's premises. Specifically, Terry Culp, currently the Vice President of Precision and, during the time period of the Complaint, the Chief of Operations for Precision,

EXHIBIT 4

testified under oath to the following:

    A.    Precision had two "walk-in doors" for entering and leaving the Precision premises and one of those "walk-in" doors was used for access by delivery people. (Culp dep. p.15, line 19-20; p19, line 13-14)

    B.    The first "walk-in door" was locked and had a sign on it the date Plaintiff fell, which directed Plaintiff to go to the **other** "walk-in" door. (Culp dep. p21, line 6-24; p25, line 4-16)

    C.    The route Precision expected Plaintiff to take to be able to **enter** the other "walk-in door" was the exact route Plaintiff took and the route customarily used **to enter** the Precision premises by delivery people such as Plaintiff. (Culp dep. pp 37,38; p39, lines 1-13).

    D.    his route caused Plaintiff to cross the area where the drainage pipe discharged. (Culp dep. pp 37-38; p39, lines 1-13; p 58, lines 6-13).

4.    Precision's own witness made it very clear that not only did Precision direct the Plaintiff to take a specific **entrance way** to Precision's premises, the entrance way that Plaintiff traversed was the exact route that Precision expected Plaintiff and other invitees such as Plaintiff to take in order to enter the Precision premises (Culp dep. pp. 37, 38 and 39, lines 1-13)

5.    Under Illinois law Precision has a clear duty to provide a safe entrance way to its

premises.

6. The allegations of Counts III and IV of Plaintiff's complaint clearly alleged this duty and a breach of this duty by Precision's failure to provide a safe entrance way to its premises.

7. Precision has failed to provide any proof that the Plaintiff's fall did not occur on the entrance way to the Precision premises. In addition, Precision has provided no case law to support an argument that it does not have a duty to provide a safe entrance and exit way to its premises.

8. In addition to the above, Defendant Precision also has a duty to provide a safe means of entrance and exit when a party [such as Precision] directs an invitee to use its specific entrance way to its premises. Further, when a tenant is aware that the entrance way to its place of business is unsafe whereas a good reason to know that such a situation exists, it is liable to an invitee who suffers injury as a result.

9. Precision's witness clearly admits in its deposition that Precision was well aware of the discharge from the pipe to the walk-way where the Plaintiff fell and further, should have been aware that wet and slippy debris accumulated at that point, thereby creating a slippery surface on the walkway which would have been traversed by the Plaintiff in delivering goods to the Defendant. Moreover, that entrance way was the exact entrance way to which the Plaintiff was directed, **by Precision** to use in order to enter the Precision premises.

10. In addition, the Court should reconsider its ruling because the pleadings and testimony from Precision's witness make it clear that the source of the liquid which caused the problem was a sump pump located **inside** the premises leased by Precision. Both Rothbart and Precision admit that the drainage pipe referred to Plaintiff's Complaint is a drainage pipe that comes from a sump pump pit **inside** the premises leased by Precision and drains to the outside of the

3

building in the area where Plaintiff fell. (Culp dep. p 28, lines 9-24; p 29, lines 1-18; Rothbart dep. p___, line ____.

11. Finally, the Court should reconsider its ruling on Defendant's motion because in making that ruling the Court necessarily resolved genuine issues of material fact which it cannot do on a motion to dismiss. Specifically, Rothbart, the landlord stated in answers to interrogatories that Defendant Precision was in control of the area where Plaintiff fell. (See page 5 of Plaintiff's Brief in Opposition to defendant's Precision Motion). In addition, Gary Rothbart, the principal of the various Rothbart defendants, testified under oath at his deposition to the following:

    a. Precision was a tenant in the building. (Rothbart dep. pp 24-25)

    b. If materials come from inside a tenant's leased to space, it is the tenant's responsibility to address any problem created by that even if it is created outside of the tenant's leased space. (Rothbart dep. p 31, lines 15-24; p 41, lines 6-24; p 62, line 13-18; p 73, line 1-9; p 74, line 16-22; p 90, line 8-16).

    c. Several sections of the lease, attached as Exhibit A to Precision's motion put maintenance responsibility on the tenant (Precision) for areas outside of the specific leased premises. (Rothbart dep. pp 103-104).

12. In ruling on Defendant Precision's motion, the Court necessarily had to resolve the genuine issues of material fact raised by testimony and documents, the resolution of those factual issues should be resolved by the jury.

## **CONCLUSION**

13.  The Court should reconsider its ruling for the following reasons:

   A.  The case law is clear that tenants have a duty to provide a safe means of entrance and exit to their premises. Plaintiff's complaint clearly alleges that Defendant Precision did not provide a safe entrance way to its premises. Also, Defendant, Precision admitted, in deposition testimony, that it directed Plaintiff to use the entrance way which traversed the hazard created by the drainage pipe and Precision knew the entrance way traversed that hazardous area.

   B.  Illinois law is clear that tenants who prescribe or direct invitees to use a specific entrance way must keep that entrance way safe. Again, Plaintiff's complaint alleges and Precision admitted that it directed Plaintiff to use the specific entrance way that he used.

   C.  Precision has offered no proof that the place where Plaintiff fell was not an entrance way or exit way to its leased premises. Plaintiff's complaint alleges that Plaintiff fell on the entranceway.

   D.  In ruling on Defendant's Precision motion, this Court necessarily made factual findings and resolved genuine issues of material fact. Under the

applicable law, all reasonable inferences from those issues of fact must be resolved in favor of the respondent to the motion, here the Plaintiff.

E. The source of the liquid and the other substance which created the hazard came from **inside** the leased premises of Precision. This Court's ruling makes is clear that Precision is responsible to its leased premises.

14. The pleadings and the deposition testimony make it clear that Plaintiff's injury was caused by a long standing hazardous condition on one of the entrance ways to the Precision's premises. This hazardous condition was well known to Precision and the use of the entrance way by delivery people such as the Plaintiff that traversed the hazardous condition was well known to Precision. In fact, Precision specifically directed the Plaintiff and other invitees to use that specific entrance way which traversed the hazardous condition. The hazardous condition consisted of a drainage pipe that drained liquid and debris from a sump pump pit **inside** premises being leased by Precision. The drainage pipe emptied out on to the usual and customary entrance walk way for delivery people coming to Precision's premises. Precision's witness testified that this walk way was part of the entrance way to the Precision premises and Precision was well aware that Plaintiff and other invitees used this walk way and encountered the hazard.

For the foregoing reasons, Plaintiff respectfully requests that this Court reconsider its ruling of May 4, 2007, granting Precision Laboratories' Motion to Dismiss Counts III and IV of Plaintiff's complaint pursuant to 735 ILCS 5/2-619, and that this Court deny Defendant Precision's motion.

Respectfully submitted,

Bruce Rogers

_____
By one of his attorneys

Cutler & Hull
Three First National Plaza
70 West Madison, Suite 3700
Chicago, Illinois 60602
Attorney No.