11. As a direct and proximate result of one or more of the aforesaid careless and negligent acts and /or omissions on the part of the Defendant, ROTHBART CONSTRUCTION COMPANY, INC. a/k/a ROTHBART CONSTRUCTION REALTY, its agents and employees, a portion of the Premises was left in a dangerous condition upon which the Plaintiff slipped and fell causing severe and permanent injuries to himself.

WHEREFORE, the Plaintiff, BRUCE ROGERS, prays for judgment to be entered in his favor and against the defendants, ROTHBART CONSTRUCTION COMPANY, INC. a/k/a ROTHBART CONSTRUCTION REALTY, in an amount which this Court deems just and proper, plus costs.

## COUNT XIV
### (Premises Liability)

1-8. Plaintiff, BRUCE ROGERS, repeats and realleges Paragraphs 1 through 8 of Count VII of this Complaint, as and for Paragraphs 1 through 8 of Count VIII.

9. At and before the time and place aforesaid, Defendant, ROTHBART CONSTRUCTION COMPANY, INC. a/k/a ROTHBART CONSTRUCTION REALTY, was in violation of the Premises Liability Act, 740 ILCS 130/1, et. seq., in one or more of the following ways:

   a. Carelessly and negligently operated, managed, maintained said Premises and its walkways, entrance ways, loading areas, and parking lot;

   b. Carelessly and negligently failed to properly maintain said Premises and its walkways, entrance ways and parking lot in a safe and proper condition;

    d.    Carelessly and negligently failed to repair or remove a drainage pipe that directed water, liquids and debris in and about the walkways, loading areas, parking lot and entranceways of the Premises;

    e.    Carelessly and negligently allowed a drainage pipe and the area in and about the walkways and parking lot leading to the entrance ways to PRECISION to be and remain in disrepair;

    f.    Carelessly and negligently failed to warn delivery people, including the Plaintiff, of the above described unsafe conditions;

    g.    Carelessly and negligently allowed an unnatural accumulation of moisture, water, liquids, debris and growth to develop and remain in and about the walkways, loading areas, parking lot and entrance ways of the Premises;

    h.    Defendant failed to provide Plaintiff with a safe pathway for ingress and egress into Precision to which he was a lawful invitee;

    i.    Defendant failed to provide or maintain sufficient and/or appropriate warnings of the unsafe conditions in and about the area where Plaintiff fell;

    j.    Defendant failed to design a safe method for removal or re-directioned water and moisture away from the walkways, loading areas, parking lot and entrance ways of the Premises; and

    k.    Defendant was otherwise careless and negligent.

10. Defendant, ROTHBART CONSTRUCTION COMPANY, INC. a/k/a ROTHBART CONSTRUCTION REALTY, knew or should have known of the foregoing dangerous conditions and problems.

COMPANY, INC. a/k/a ROTHBART CONSTRUCTION REALTY, its agents and employees, the aisles and walkways were left in a dangerous condition which caused the Plaintiff to slip and fall, causing severe and permanent injuries to himself.

WHEREFORE, the Plaintiff, BRUCE ROGERS, prays for judgment to be entered in his favor and against the Defendant, ROTHBART CONSTRUCTION COMPANY, INC. a/k/a ROTHBART CONSTRUCTION REALTY, in an amount in excess of $50,000 and which this Court deems just and proper, plus costs.

Respectfully submitted,

BRUCE ROGERS

By: _____
One of His Attorneys

Edwin J. Hull, III
Cutler & Hull
70 West Madison Street
Suite 3750
Chicago, IL 60602
(312) 726-0777
Atty. No. 33718

## LEASE

This LEASE made and entered into this 11th day of July, 2003, by and between Precision Laboratories, Inc. an Illinois corporation (hereinafter referred to as "TENANT"), and 977 Northpoint Venture, L.L.C., an Illinois limited liability company (hereinafter referred to as "LANDLORD").

## WITNESSETH:

### DEMISE

LANDLORD and TENANT hereby mutually assent for good and valuable consideration to enter into a lease for premises that are situated in that certain building (the "BUILDING") located at 977 Northpoint Blvd. in Waukegan, Illinois 60085, and TENANT'S address shall be 959 and 965 Northpoint Blvd. (the "PREMISES"). The BUILDING and the real estate on which it is located are hereinafter referred to as the "PROPERTY".

Such letting and hiring is upon and subject to the terms, covenants and conditions herein set forth and TENANT and LANDLORD covenant as a material part of the consideration for this LEASE to keep and perform each and all of said terms, covenants and conditions by them to be kept and performed and that this LEASE is made upon the condition of such performance.

### 1. Purpose

The PREMISES are to be used only for offices for the warehouse and distribution of fertilizers and related products for golf and landscaping industry and ancillary warehouse, assembly or storage purposes. Any other use of the PREMISES without the express written consent of the LANDLORD shall be deemed a violation of this LEASE.

### 2. Term

The term ("Term") of this LEASE shall be for a period beginning on July 28, 2003, and terminating on July 31, 2004, except as otherwise expressly provided in this LEASE.

### 3. Possession

LANDLORD shall use due diligence to give TENANT Possession of the PREMISES on the Commencement Date of this LEASE or within reasonable time after such Commencement Date. It is further understood that within forty-eight (48) hours of Possession, TENANT shall deliver to LANDLORD a "punch list" of repair items that TENANT shall not be liable to repair at the end of the leasehold Term, except for latent defects.

### 4. Definitions As Used In This Lease

A. The term "Commencement Date" is the date of the beginning of the LEASE as defined in Section 2 of this LEASE.

B. The term "Tenant's Proportionate Share" shall mean forty (40%) percent. For the purposes of this LEASE, the Rentable Square Footage of the PREMISES and the BUILDING shall be deemed to be 22,800 square feet and 57,000 square feet, respectively. The TENANT'S share allocated to the PREMISES as it relates to the BUILDING as a whole, is not meant, nor shall be construed, as a representation by LANDLORD as to the rentable or usable square footage of the PREMISES. The parties recognize that this ratio, as well as the area measurement are reasonable approximations that may not be exactly precise, but both LANDLORD and TENANT accept such ratio as final and binding for all purposes of this LEASE.

C. The term "Taxes" means any and all taxes of every kind, whatsoever, which LANDLORD shall pay or become obligated to pay for each calendar year of the Term (including any extensions or renewals) of this LEASE (regardless of whether such taxes were assessed or became a lien during, prior or subsequent to the calendar year of payment) because of or in connection with the ownership, leasing and operation of the PROPERTY including without limitation, real estate taxes, legal fees, consulting fees and court costs charged for the protest or reduction of property taxes and/or assessments or an increase therein in connection with the PREMISES including the BUILDING, any tax or excise on rent or any other tax (however described) on account of rental received for use and occupancy of any or all of the BUILDING and/or the PREMISES, whether any such taxes are imposed by the United States, the state or other local governmental municipality, authority or agency or any other political subdivision of any thereof in the jurisdiction in which the PROPERTY is located. Taxes shall not include any net income, capital stock, estate or inheritance taxes; provided however, if at any time during the Term hereof a tax or excise on rents or income or other tax however described (herein called "Rent Tax") is levied or assessed by the United States or the state in which the PROPERTY is located or any political subdivision thereof on account of the rents hereunder or the interest of LANDLORD under this LEASE, and if such Rent Tax is in lieu of or as a substitute for, in whole or in part, real estate taxes or other ad valorem taxes such Rent Tax shall constitute Taxes.

D. The term "Operating Costs" means any and all expenses, costs and disbursements [other than Taxes as defined in Section 4(C)] of every kind and nature whatsoever incurred by LANDLORD in connection with the ownership, management, maintenance, operation and repair of the PROPERTY [including without limitation, exterior energy costs, easement maintenance expenses, including but not limited to landscape maintenance and replacement; water and sewer charges levied by the Village of Waukegan; pest extermination; rubbish removal; common area rubbish removal; sprinkler and/or security system monitoring fees and utility charges; snow removal; patching, paving, sealing and striping of parking areas, driveways and dock areas; exterior gutters and downspouts, dock rails and stair rails; HVAC System maintenance contract; overhead door maintenance; dock leveler maintenance; ; insurance costs (including but not limited to fire, property, commercial general liability, terrorism, and one (1) year's loss of rents as well as all reasonable and customary deductibles paid by Landlord for damages and injuries covered by policies of insurance maintenance for the Property, and all sums paid to satisfy judgments rendered affecting the Property to the extent not covered by insurance); routine repairs, maintenance and decorating; amortization (along with reasonable financing charges) of capital improvements made to the PROPERTY which may be required by any government authority or which will improve the operating efficiency of the PROPERTY, which LANDLORD shall be or become obligated to pay in respect of a calendar year, regardless of when such Operating Costs were incurred; or any other expenses which LANDLORD shall be or become obligated to pay in respect of a calendar year, regardless of when such Operating Costs were incurred, or any other expenses or charges whether or not hereinbefore mentioned which,

in accordance with generally accepted accounting or management principles respecting comparable buildings in the Chicago Metropolitan Area, would be considered as an expense of owning, managing (except property management fees), operating, maintaining or repairing the PROPERTY. Operating Costs shall not include expenditures for the following: (i) costs of alterations of the PREMISES; (ii) costs of capital improvements on the PREMISES or the BUILDING and costs of curing construction defects, if any; (iii) depreciation (except on any capital improvements made or installed after the Commencement Date for the purpose of saving labor or otherwise reducing applicable Operating Costs); (iv) interest and principal payments on mortgages, if any; (v) real estate brokers' leasing commissions or compensation; (vi) any cost or expenditure (or portion thereof) for which LANDLORD is reimbursed, whether by insurance proceeds or otherwise; (vii) property management fees; and (viii) any costs or expenditures by LANDLORD for the roof, exterior walls, foundation, or structural members thereof, except if such damage is caused by any negligence or intentional act or omission of TENANT, or TENANT'S agents, employees, or invitees; notwithstanding the foregoing, as to sub-sections (i) through (viii), the cost of any capital improvements to the BUILDING made after the date of this LEASE which are (1) intended to reduce Operating Costs; or (2) required to cause the BUILDING to comply with the Americans with Disabilities Act or (3) which are required under any governmental laws, regulations, or ordinances which were not applicable to the BUILDING as of the date hereof shall be deemed Operationing Costs and be amortized on a level pay debt service basis over fifteen (15) years, with interest at ten percent (10%) per annum shall be included in Operating Costs.

## 5. Base Rent

Except as otherwise provided herein, TENANT shall pay as Base Rent to LANDLORD'S agent SLJ Properties, L.L.C. and mailed in care of Rothbart Realty Company, 1945 Techny Road, Suite 6, Northbrook, Illinois 60062-5357, the following sums:

| From: August 1, 2003 | To: July 31, 2004 | $ 124,260.00 | Annualized |
|---|---|---|---|
| | | $ 10,355.00 | Monthly |

in advance beginning August 1, 2003, and on the first day of each calendar month thereafter during the Term and at the same daily rate for a fraction of a month if the Term shall end on any day except the last day of a calendar month.

Any rent (whether Base Rent or Additional Rent) or other amount due from TENANT to LANDLORD under this LEASE which shall not be paid within ten (10) days of the due date shall be subject to a late charge (i) in the amount of five (5%) percent of the payment, and (ii) any payment which shall not be paid within ten (10) days of the due date shall, in addition to said late charge, bear interest at the Prime Rate as published by Wall Street Journal, plus four (4%) percent from the date the same is payable under the terms of this LEASE until the same shall be paid. The payment of such interest shall not excuse or cure any default by TENANT under this LEASE. If any payment given to LANDLORD by TENANT under this LEASE shall not be honored by the bank upon which it is drawn, LANDLORD, at its option, may require that all payments made by TENANT to LANDLORD over the next twelve (12) months to be by certified check, or cashier's check, or wire transfer. In addition, TENANT shall reimburse LANDLORD for any of LANDLORD'S bank costs incurred in connection with TENANT'S bounced check. Notwithstanding the foregoing, LANDLORD shall still be entitled to any other remedies available to LANDLORD under the LEASE or at law for TENANT'S late rental payments. The covenants

herein to pay rent (both Base Rent and Additional Rent) shall be independent of any other covenant set forth in this LEASE.

## 6. Taxes and Operating Costs; Additional Rent

It is further agreed between the parties hereto that in addition to the Base Rent provided for herein that TENANT shall also pay during the Term of this LEASE as Additional Rent, Tenant's Proportionate Share of the Taxes and Operating Costs as hereinbefore defined. To ensure the payment of such Taxes and Operating Costs, TENANT shall pay to LANDLORD beginning on August 1, 2003, and on the first day of each and every month thereafter at the time of payment of the rental provided for herein one-twelfth (1/12th) of Tenant's Proportionate Share of the estimated Taxes and Operating Costs against the PROPERTY. The initial payment for the year 2003 shall be Three Thousand Three Hundred ($3,300.00) Dollars per month, prorated at the same daily rate for fractions of a month if the Term shall begin on any day except the first day or shall end on any day except the last day of the month. The monies paid by TENANT as aforesaid shall be used by LANDLORD to pay the Taxes and Operating Costs when the bills become available. [For information purposes only, 2002 Taxes totaled Seventy-Three Thousand Three Hundred and Fifty-Three ($73,353.00) and 2002 Operating Costs totaled Twenty ($20,000.00) Dollars].

If anytime during the Term of this LEASE (a) the Taxable Valuation of the PROPERTY is reduced below Eight Hundred and Thirty Nine Thousand Five Hundred and Twenty Four ($839,524.00) Dollars Dollars being the Taxable Valuation of the PROPERTY as of the Commencement Date or (b) the LANDLORD is successful in reducing the Taxable Valuation below Eight Hundred and Thirty Nine Thousand Five Hundred and Twenty Four ($839,524.00) Dollars being the Taxable Valuation of the PROPERTY, the difference in the real estate taxes between Eight Hundred and Thirty Nine Thousand Five Hundred and Twenty Four ($839,524.00) Dollars times the applicable tax rate and the tax bill for any given year shall accrue solely to the LANDLORD, and TENANT shall not be obligated to pay for any professional fees attributable to such savings.

## 7. Adjustment Payment

As soon as practicable during each calendar year of the Term of this LEASE and the next calendar year following the year in which this LEASE terminates, LANDLORD shall deliver to TENANT a written statement setting forth in reasonable detail Tenant's Proportionate Share of the Additional Rent (Taxes and Operating Costs as hereinbefore defined) for the immediately preceding calendar year. Within thirty (30) days after delivery of such statement, TENANT shall pay to LANDLORD less any amounts previously paid by TENANT per Section 6 herein ("Net Rental Adjustments"). Subsequent monthly Additional Rent payments shall thereafter be increased to the sum of: (1) one-twelfth (1/12th) of such LANDLORD'S good faith estimate of Additional Rent for the present calendar year; and (2) one-twelfth (1/12th) of such LANDLORD'S good faith estimate of Additional Rental for the present calendar year multiplied by the number of monthly rental payment dates having elapsed for such calendar year less such Additional Rental paid to date, divided by the number of monthly rental payment dates remaining in such present calendar year.

In the event that any such statement required above indicates that the total Additional Rent paid by TENANT during the preceding calendar year exceeds the aggregate Additional Rent payable by TENANT for such calendar year pursuant to Sections 6 and 7 herein, LANDLORD shall apply such excess on any amounts of Additional Rent next falling due under this LEASE so long as TENANT is not then in default of any of the terms and provisions of this LEASE.

In the event of any dispute as to any Additional Rent due hereunder, TENANT shall have the right with ten (10) days advance written notice to inspect LANDLORD'S accounting records relative to Taxes and Operating Costs at LANDLORD'S accounting office during normal business hours at any time within thirty (30) days following the furnishing by LANDLORD to TENANT of such statement provided that TENANT is not in default of any terms and conditions of this LEASE. Unless TENANT takes written exception to any item within ninety (90) days after the furnishing of the statement of Additional Rent (which shall be noted on the item as "paid under protest"), such statement of Additional Rent shall be considered as final and accepted by TENANT.

In the event of the termination of this LEASE by expiration of the stated Term or for any other cause whatsoever prior to the determination of the Additional Rent as hereinabove set forth, LANDLORD shall prorate based upon either the last known Taxes or the new real estate tax assessment for the PROPERTY using the last known tax rate and applicable factors or equalization rates and Operating Costs at one hundred ten (110%) percent on the basis of which the number of days in such partial year and/or full year bears to three hundred sixty five (365) days. TENANT'S agreements to pay Additional Rent up to the time of termination of this LEASE shall survive the expiration or termination of the LEASE as shall LANDLORD'S obligation to refund any of TENANT'S excess Additional Rent deposits. If TENANT shall fully and faithfully perform every provision of this LEASE to be performed by it, the security deposit or any remaining balance and the remaining balance of any other Additional Rental Deposits, if any, shall be returned to TENANT at the expiration of the LEASE Term and upon TENANT'S vacation of the PREMISES.

## 8. Holding Over

Should TENANT hold-over after the termination of this LEASE, by lapse of time or otherwise, TENANT shall become a tenant from month to month and any such Holdover shall not constitute an extension of this LEASE. Additionally, during such Holdover period, TENANT shall pay as final and liquidated damages as to any rent obligation Base Rent and Additional Rent (as heretofore adjusted or as estimated by LANDLORD) at one hundred and fifty hundred (150%) percent of the rate payable for the month immediately preceding said holding over. In addition, TENANT shall pay LANDLORD all damages, consequential as well as direct, sustained by reason of TENANT'S holding over. The provisions of this paragraph do not exclude the LANDLORD'S rights of re-entry or any other right hereunder.

## 9. Maintenance Of The BUILDING

A. <u>Maintenance By TENANT</u>. During the Term of this LEASE or any extension or renewal period, TENANT shall at its sole cost and expense maintain and operate the leased PREMISES in good condition and repair including replacements; such repairs, maintenance, and replacements shall include but not be limited to plate and window glass; floor coverings; heating, air-conditioning, and mechanical appurtenances and or fixtures (HVAC); dock levelers, truck dock or drive-in doors and exterior doors; lighting; power wiring, emergency lights, and electrical fixtures; plumbing systems and fixtures; hot water heater; rubbish removal; and janitorial services. TENANT shall also make arrangements directly with the appropriate utility companies for the supply of gas, electric, telephone or other communication services and shall pay all fees, expenses thereof. LANDLORD hereby reserves the right to separately meter TENANT'S water-sewer usage, and bill TENANT according for such excess usage and/or excess usage surcharges. It is understood that LANDLORD shall procure a HVAC maintenance contract, the

cost of which shall be treated as an Operating Costs and TENANT shall be obligated to pay for any and all repairs, maintenance and replacements of the HVAC systems attributable to the PREMISES which are not included in Operating Costs; notwithstanding the foregoing during the Initial Term of this LEASE, TENANT'S costs as to the HVAC systems shall not exceed in the initial calendar year the sum of Four Thousand ($4,000.00) Dollars (HVAC CAP) and the HVAC cap for each successive year thereafter shall be increased annually by seven (7%) percent, which amounts shall be prorated based upon TENANT'S actual occupancy for the PREMISES during any calendar year for which TENANT has partial occupancy. In the event TENANT'S actual HVAC costs for any calendar year are less than the applicable HVAC CAP, the difference between the HVAC CAP and TENANT'S actual HVAC costs shall be accumulated and carried forward to future calendar years and shall be applied in an amount not to exceed the accumulated amount to the amount, if any, that the TENANT'S actual HVAC costs in any calendar year exceed the HVAC CAP. If TENANT does not promptly make such repairs, maintenance, or replacements as required hereunder, LANDLORD may, but need not, make such repairs, maintenance, and replacements and one hundred twenty five (125%) percent of LANDLORD'S cost for such repairs, maintenance and replacements shall be due and payable by TENANT upon demand. Even if LANDLORD makes such maintenance, repairs or replacements, such shall not waive the default of TENANT hereunder in failing to make such repairs, maintenance or replacements.

B. <u>Maintenance By LANDLORD</u>. Except for damage caused by any negligence or intentional act or omission of TENANT, or of TENANT'S agents, employees or invitees, LANDLORD agrees that it will keep and maintain in good condition and repair (1) the exterior of the PREMISES (including the landscaping, parking area and driveways), (2) the roof (excluding any heating or cooling or ventilating units mounted on the roof), structural soundness of the concrete floors and exterior walls, and (3) those portions of the water, plumbing, sewer, and electrical systems that are not within the possession or control of the TENANT.

C. <u>Maintenance By LANDLORD-TENANT</u>. Notwithstanding Section 9(A) above and except for any damage caused by any negligence or intentional act or omission of TENANT, or of TENANT'S agents, employees or invitees, LANDLORD shall to the extent necessary repair at LANDLORD sole cost and expense for the first sixty (60) days of TENANT'S occupancy, the electrical, plumbing, hot water heater, and LANDLORD shall to the extent necessary repair at LANDLORD'S sole cost and expense the heating to January 31, 2004 and LANDLORD shall to the extent necessary repair at LANDLORD'S sole cost and expense to the air-conditioning to September 30, 2003. Thereafter as herein provided, TENANT shall be responsible for all of the maintenance, repairs and replacements.

Notwithstanding the above [9(A), 9(B), or 9(C)], any damage to the HVAC and electrical systems due to fumes and/or emissions caused by TENANT'S use and occupancy of the PREMISES shall be TENANT'S sole responsibility to replace, repair and maintain said systems.

All of the required maintenance, repairs and replacements required hereunder; (1) shall be completed expeditiously in a good and workmanlike manner; (2) shall be in compliance with all legal requirements and applicable building codes; (3) shall become part of the demised PREMISES; and (4) shall be subject to the terms of this LEASE.

## 10. Condition Of The Premises

Prior to the Commencement Date, LANDLORD, at its sole expense, shall place all mechanicals including lights, HVAC, dock doors, and plumbing in good working order.

Subject to "punch list" heretofore referred to by taking Possession of the PREMISES, TENANT hereby covenants that the PREMISES were, as of the date of taking Possession, in good order, repair and condition. Except as stated in these Sections 9 and 10, it is further mutually understood that other than any express warranties stated in th LEASE, the PREMISES are being leased on an "As Is" basis with no promises of the LANDLORD to alter, remodel, decorate, clean or improve the PREMISES or the BUILDING. LANDLORD hereby DISCLAIMS all WARRANTIES, either express or implied, with respect to the condition of the PREMISES or the BUILDING.

As of the date of the execution of this LEASE, LANDLORD has not received: (1) any notices from any governmental or quasi-governmental agencies alleging violations of any federal, state, local or municipal environmental health and safety laws, statutes, ordinance, and rules and regulations; or (2) any notices of claims made or threatened regarding noncompliance with Title III of the American with Disabilities Act of 1990 (ADA) as to the PREMISES or the BUILDING; or (3) any notices that the PREMISES or the BUILDING violate, in any way, any law, code, rule, regulation or order.

## 11. Examination Of Premises Prior To Termination Of Leasehold

At the termination of the Term of this LEASE, TENANT shall yield Possession of the PREMISES to LANDLORD in good condition and repair, loss by fire or other casualty (except if such fire or other casualty is due to the negligence of the TENANT), ordinary wear and tear excepted. TENANT shall have the sole responsibility for removing any and all debris from the interior and exterior of the PREMISES; subject to Section 9(a) herein, repairing and/or replacing any and all heating, air-conditioning and mechanical appurtenance and/or fixtures so that same are in good working order; replacing any and all broken glass in and about the PREMISES; cleaning the PREMISES so that they are returned to LANDLORD in a clean and orderly condition including removal of any and all foreign materials on the floor and walls of the PREMISES (including oil and other chemicals), and delivering the keys to LANDLORD at the place of payment of the rent.

It is understood that whenever possible the parties will mutually inspect the PREMISES prior to the termination of the LEASE for the purpose of evaluating any and all repair or restoration work to be performed by TENANT in order to return the PREMISES to LANDLORD in its condition prior to TENANT'S taking Possession of the PREMISES. LANDLORD hereby reserves the right to have qualified contractors partake in this inspection. It is further understood that upon vacation of the PREMISES by TENANT that LANDLORD shall re-inspect the PREMISES for the purpose of determining whether or not all repairs and restoration required of TENANT have been made, and that after such inspection any and all deposits with LANDLORD shall be returned to TENANT, after deducting therefrom the estimated costs of any and all repairs and/or restoration required to be performed by TENANT which have not been made as of the time of TENANT'S vacation of the PREMISES and after the further deduction therefrom of any and all monies estimated to be due to LANDLORD for the payment of any Taxes, Operating Costs, or other obligations of TENANT hereunder. Upon finalization of any amounts estimated hereunder, any additional amounts owed by TENANT to LANDLORD shall immediately be paid to LANDLORD; and any additional amounts retained by LANDLORD shall be returned to TENANT.

TENANT shall be responsible for all damages consequential as well as direct sustained by LANDLORD as a result of TENANT'S failure to surrender Possession of the PREMISES in accordance with the terms

of this LEASE and the provisions within this paragraph shall survive termination of this LEASE and shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and assigns, and mortgagees thereof.

### 12. Uses Prohibited

TENANT maintains the right to use the PREMISES only for those purposes expressly stated in Section 1 of this LEASE. In no event shall TENANT use the PREMISES or BUILDING for any activities which would be in violation of all federal, state, local or municipal laws, statutes, ordinances, and rules and regulations, including but not limited to those relating to zoning, environmental protection, health and safety so that no clean-up claim or other obligation or responsibility arises from a violation of any of the foregoing, TENANT further agrees to promptly cure any such violation at its own expense, and shall furthermore defend and indemnify LANDLORD, its agents and beneficiaries, mortgagees, and officers, agents, and employees thereof respectively, for any and all liability, loss, costs (including attorneys fees and expenses), damages, responsibilities or obligations incurred as a result of any violation of any of the foregoing.

### 13. Omit

### 14. Alterations and Repairs

TENANT shall not erect any partitions, make any alterations in or additions, or changes to the PREMISES without the LANDLORD'S prior written approval in each and every instance, such consent shall not be unreasonably withheld. LANDLORD'S consent to any alteration of the PREMISES is limited to only that such alteration and does not give TENANT the right to additional alterations without LANDLORDS express written consent. If TENANT does not remove any additions, decorations, fixtures, hardware, non-trade fixtures and improvements after request to do so by LANDLORD, LANDLORD may remove the same and TENANT shall pay the of such removal to LANDLORD upon demand. Except to the extent of LANDLORD'S negligent or willful act or omission, TENANT hereby agrees to hold LANDLORD and LANDLORD'S beneficiaries, their agents and employees harmless from any and all liabilities of every kind and description which may arise out of or be connected in any way with said alterations or additions. Any mechanic's lien filed against PREMISES, or the BUILDING or the PROPERTY, for work claimed to have been furnished to TENANT shall be discharged of record by TENANT within ten (10) days thereafter, at TENANT'S expense, provided however TENANT shall have the right to contest any such lien on the posting of reasonably sufficient security. Notwithstanding anything contained to the contrary herein, TENANT shall, without LANDLORD'S consent, have the right to make minor improvements or minor decorations within the PREMISES, employing contractors selected by TENANT, provided such improvements/decorations are in keeping with the standards of TENANT'S existing PREMISES and do not affect the structure of the BUILDING and/or any BUILDING systems.

### 15. Abandonment

During the Term, if TENANT shall abandon, vacate or surrender (whether at the end of the stated Term or otherwise) the PREMISES, or be dispossessed by process of law, or otherwise, any personal property belonging to TENANT and left on the PREMISES shall be deemed abandoned, at the option of the LANDLORD.

### 16. Assignment And Subletting

TENANT shall not assign, transfer or encumber this LEASE and shall not sublease the PREMISES or any part thereof or allow any other person to be in possession thereof without the prior written consent of LANDLORD in each and every instance, which consent or consents shall not be unreasonably withheld.

## 17. Signs

For purpose of this LEASE, "Signs" shall include all signs, designs, monuments, logos, banners, projected images, pennants, decals, advertisements, pictures, notices, lettering, numerals, graphics, or decorations. TENANT shall not place or affix any exterior or interior signs visible from the outside of the PREMISES. At LANDLORD'S sole cost in accordance with the BUILDING'S standard signage, LANDLORD shall affix TENANT'S name on the BUILDING'S directory and front and rear steel doors.

## 18. Damage To Property - Injury To Persons

TENANT, as a material part of the consideration to be rendered to LANDLORD under this LEASE, to the extent permitted by law, hereby waives all claims except claims caused by or resulting from (a) the non-performance of the LANDLORD of its obligation under this LEASE after written notice or (b) the willful or negligent act or negligent omission of LANDLORD, its agents, servants or employees which TENANT or TENANT'S successor or assigns may have against LANDLORD, or its agents, servants, or employees for loss, theft or damage to the PROPERTY and for injuries to persons in, upon or about the PREMISES or the BUILDING from any cause whatsoever.

TENANT will hold LANDLORD, its agents, servants, and employees exempt and harmless from and on account of any damage or injury to any person, or to the goods, wares, and merchandise of any person, arising from the uses of the PREMISES by TENANT or arising from the failure of TENANT to keep the PREMISES in good condition as herein provided if non-performance by the LANDLORD or negligence of the LANDLORD, its agents, servants or employees does not contribute thereto. Neither LANDLORD nor its agents, servants, employees shall be liable to TENANT for any damage by or from any act or negligence of any co-tenant or other occupant of the same BUILDING, or by any owner or occupant of adjoining or contiguous PROPERTY, provided however, that the provisions of this paragraph shall not apply to negligence or willful and wanton misconduct of LANDLORD, its agents, servants or employees. TENANT agrees to pay for all damage to the BUILDING or the PREMISES, as well as all damage to tenants or occupants thereof caused by TENANT'S misuse or neglect of the PREMISES, its apparatus or appurtenances or caused by any licensee, contractor, agent or employees of TENANT. Notwithstanding the foregoing provisions, neither LANDLORD nor TENANT shall be liable to one another for any loss, damage or injury caused by its act or neglect to the extent that the other party has recovered the amount of such loss, damage or injury from insurance and the insurance company is bound by this waiver of liability.

Particularly, but not in limitation of the foregoing paragraph, all PROPERTY belonging to TENANT or any occupant of the PREMISES that is in the BUILDING or the PREMISES shall be there at the risk of TENANT or other person only, and LANDLORD or its agent, servants, or employees (except in case of non-performance by the LANDLORD after written notice or negligence or willful and wanton conduct of LANDLORD or its agents, servants, employees) shall not be liable for: damage to or theft of or misappropriation of such PROPERTY; nor for any damage to PROPERTY entrusted to LANDLORD, its agents, servants, or employees, if any; nor for the loss of or damage to any PROPERTY by theft or otherwise, by any means whatsoever, nor for any injury or damage to persons or PROPERTY resulting from fire, explosion, falling plaster, gas, electricity, snow, water or rain which may leak from any part

of the BUILDING or from the pipes, appliances or plumbing works therein or from the roof, street or subsurface or from any other place or resulting from dampness or any other cause whatsoever; nor for interference with the light or other incorporeal hereditaments, nor for any latent defect in the PREMISES or in the BUILDING. TENANT shall give prompt written notice to LANDLORD in case of fire or accidents in the PREMISES or in the BUILDING or of defects therein or in the fixtures or equipment.

In case any action or proceeding be brought against LANDLORD by reason of any obligation on TENANT'S part to be performed under the terms of this LEASE, or arising from any act or negligence of the TENANT, or of its agents or employees, TENANT, upon notice from LANDLORD shall defend the same at TENANT'S expense by counsel reasonably satisfactory to LANDLORD.

TENANT shall maintain in full force and effect during the Term of this LEASE (including any period prior to the beginning of the Term during which TENANT has taken Possession in responsible companies licensed or approved to conduct business in Illinois, and approved by LANDLORD (i) special causes of loss insurance covering all TENANT'S property in, on or about the PREMISES, with full waiver of subrogation rights against LANDLORD in an amount equal to the full replacement cost of such property, and (ii) commercial general liability insurance, including broad form commercial general liability option, and products and competed operations, insuring TENANT against all claims, demands or actions for injury to or death of any one person and damage to PROPERTY in an amount of not less than Two Million Dollars ($2,000,000.00) combined single limit per occurrence plus One Million Dollars ($1,000,000.00) excess liability coverage or such other amounts as LANDLORD may reasonably require; and furthermore fire-legal and/or TENANT'S legal liability in an amount not less than One Hundred Thousand Dollars ($100,000.00). All liability policies shall cover the entire PREMISES. LANDLORD shall maintain in full force and effect during the Term of this LEASE (a) special form insurance for the full replacement cost of the BUILDING, (b) business income insurance equal to one years rent, and (c) commercial general liability insurance the premium for which shall be included as an Operating Cost.

All such policies shall name LANDLORD'S PARTIES and any mortgagee as an additional insured. For purposes of this Section 18, LANDLORD'S PARTIES shall mean (i) LANDLORD; (ii) omit; (iii) Rothbart Realty Company, property manager; and (iv) the respective affiliates, subsidiaries, successor, assigns heirs, officers, directors, shareholders, partners, members, employees, agents of LANDLORD. All Insurance policies shall indicate that at least thirty (30) days prior written notice shall be delivered to all additional parties insured by the insurer prior to termination cancellation of such insurance and TENANT shall provide Certificates of Insurance, not less than ten (10) days prior to the Commencement Date, evidencing the aforesaid coverage to all insured parties. Failure of TENANT to provide the insurance coverage set forth in the above paragraphs shall entitle LANDLORD to either (I) treat said failure as a default and/or (ii) obtain such insurance and charge TENANT the premiums therefore plus interest thereon at the rate set forth in Section 5 hereof as Additional Rent. TENANT shall not violate or permit a violation of any of the conditions or terms of any such insurance policies and shall perform and satisfy all reasonable requirements of the insurance company issuing such policies. With respect to any insurance policy procured to comply with any financial assurance requirement imposed by any state of federal law or regulation, or to any other casualty, PROPERTY, or environmental impairment insurance purchased by TENANT, such policy or policies shall name LANDLORD PARTIES and any mortgagees of LANDLORD as additional parties insured.

## 19. Damage Or Destruction